RAKES *et al.*

*v.*

RUSTIN LAND, MINING & MANUFACTURING CO.

(*Supreme Court of Appeals of Virginia, July 28, 1895.*)

[22 S. E. Rep. 498.]

**Landlord and Tenant.**
A tenant cannot dispute his landlord's title.

**Injunctions—Restraining Trespass and Waste.***
One making a fair prima facie showing in support of his title to land may obtain an injunction to restrain the commission of waste or of trespass if the injury would be irreparable.

**Same—Same—Need Not Show "No Adequate Remedy at Law."**
One may obtain an injunction against trespass or waste without showing that he could not obtain adequate compensation in damages in a suit at law.

Appeal from circuit court, Carroll county : Bolen, Judge.

Suit by the Rustin Land, Mining & Manufacturing Company against Jackson Rakes and others. Decree for complainant, and defendants appeal. Affirmed.

*Robert Crockett*, for appellants.

*Fulton & Fulton*, for appellee.

RIELY, J., delivered the opinion of the court.

The question here is as to the right of the appellee to the injunction that was awarded it against the appellants to restrain

---

*See monographic note on "Injunctions," Va. Rep. Anno.

them from cutting or removing the wood or timber upon a certain parcel of land of 109 acres, described in the bill, and which was afterwards at the hearing made perpetual.

It appears from the record that the appellee claims title to a large body of land under a grant from the commonwealth to Thomas Rustin, bearing date December 11, 1795, and that the appellants claim through one John Porter, who obtained a grant from the commonwealth for the said 109 acres on January 10, 1856. The claimants under the Rustin grant claimed that this parcel of land was within their grant and survey. They brought a suit in ejectment against John Porter, and the declaration was served on him on February 10, 1859. Subsequently, on March 1, 1859, an agreement in writing, under seal, was entered into and duly executed by John Porter and a certain David G. Shepherd, styled "trustee," the agent and manager of the owners under the Rustin grant, by which the respective rights to the said parcel of land were compromised and adjusted, and the suit dismissed. By that agreement John Porter acknowledged the title of the claimants under the Rustin grant to the land, and became their tenant. By its provisions he was authorized to fence, cultivate, or use any of the land until the timber should be taken off, and they reserved the right to cut and use the timber in any way they might see proper. Porter agreed that, when they had gotten all the timber from the land that they might wish, he would buy the land from them, and give as much for it as any other person; and they agreed to give to him the refusal of the land so soon as they should get the timber off, or so much of it as they might wish to use. The effect of this agreement was to make an adjustment and settlement by compromise of the respective rights of the parties to the land, and to invest the Rustin claimants with an indisputable title to it, so far as John Porter was concerned. He was thereby estopped from contesting or disputing thereafter their title to it. He also, by becoming their tenant, was, for this further reason, that a tenant cannot dispute his landlord's title, estopped

from denying the right of the Rustin claimants to the land. He was thus doubly prevented in law from questioning their title.

The Ruskin claimants having, then, so far as John Porter and all who claim through and under him were concerned, an incontestable title to the land, were they entitled to the injunction? It was alleged in the bill that the chief value of the land consists in the timber upon it; that, if stripped of this, it is of little value; and that the appellants, who were defendants in the court below, were engaged in committing irreparable trespass, waste, and injury to the land by cutting the timber and hauling it off and selling it. The averments of the bill in these respects are sustained by the testimony taken in the cause. It was shown that the value of the land consists in its minerals and timber; and that the timber is indispensable to the development of the minerals, and that the loss of it would be an irreparable injury. It was further shown that the defendants were cutting and taking away timber from the land, and claimed the right to do so under their purchase from John Porter. The jurisdiction of a court of equity to restrain by injunction the commission of waste or trespass, where the applicant for the injunction has the title to the land, and the injury would be irreparable, is well settled. High, Inj. §§ 460, 464; Pom. Eq. Jur. §§ 1347, 1356, 1357; Manchester Cotton Mills *v.* Town of Manchester, 25 Grat. 825; Sanderlin v. Baxter, 76 Va. 299; Switzer v. McCulloch, Id. 777; and Jerome v. Ross, 7 Johns. Ch. 315. In the case of Manchester Cotton Mills v. Town of Manchester, supra, it was said by Judge Staples, in delivering the opinion of the court, that it was not essential that the applicant for the injunction should establish a clear title, but only that he should show a fair prima facie case in support of his title. 25 Grat. 831. Here the complainant showed, not merely a fair prima facie case in support of its title as against John Porter, through whom the defendants claimed, but that against him, and all who claim under him, it had a clear

and incontestable title, or, what amounts to the same thing, a title which he and they were estopped from contesting.    Emerick v. Tavener, 9 Grat. 220, and 3 Minor, Inst. pt. 1, pp. 236–238. It was argued by the counsel for the appellants that the written agreement referred to was obtained from John Porter by fraud, and that the defendants were therefore not estopped from relying on such title as he possessed prior to the execution of the agreement.    It was not claimed that there was any evidence of fraud outside of the paper itself, except the mere fact that the complainant had not removed the timber so that Porter could buy the land.    The agreement stipulated for no period within which the timber would or should be removed, and the failure to use or remove it was not fraudulent.    But it was further argued that the agreement itself was the perpetration of a fraud upon John Porter, inasmuch as it was entered into under the service on him of a declaration in ejectment.    The declaration was served on February 10, 1859, and the agreement was entered into on March 1, 1859.    It would be going very far indeed to say that the compromise and settlement by rival claimants of their respective rights to the subject-matter of a pending suit constitutes fraud.    Equity is ever ready to avoid the fruits of duress or fraud, but neither is disclosed by the record.    It is the policy of the law to uphold the free and voluntary settlement by compromise of adverse or conflicting rights, not to seize upon it as evidence of duress or fraud. The practice may be said to be one of almost daily occurrence, and is unquestioned.    Nor is it necessary, in order to obtain an injunction to restrain the commission of trespass or waste, that the plaintiff should aver or prove that he could not obtain adequate compensation in damages in a suit at law.    This is not necessary to entitle him to relief in equity ; but, whenever the substantive value of the estate in the character in which it is enjoyed is imperiled, that is sufficient to invoke the jurisdiction of a court of equity.    Kerr, Inj. 199 ; Manchester Cotton Mills v. Town of Manchester,

25 Grat. 825, 828 ; and Anderson v. Harvey's Heirs, 10 Grat. 386, 398.   For 30 years the relations of the claimants under the Rustin grant and John Porter to each other and to the land in controversy remained as established by the agreement of March 1, 1859.   They used it as their convenience and necessity required the use of the timber.   He lived upon adjacent land, and acquiesced in such use of it by them.   It was after this long period of repose and acquiescence in the provisions of the said agreement by John Porter that the appellants, with the knowledge of such agreement, and for the paltry sum of $10, and of $100 more if successful in the suit over the land, bought it, and caused this litigation with the appellee.   Their purchase has not the appearance of the good faith in which equity delights.

There is no error in the decree complained of, and the same must be affirmed.