# Richmond.

## GARDNER v. MONTAGUE AND OTHERS.

### March 12, 1908.

#### Absent, Cardwell, J.

1. APPEAL AND ERROR—*New Trial—Demurrer to Evidence.*—In determining whether the trial court erred in refusing to set aside a verdict as contrary to the evidence, this court will consider the question as upon a demurrer to the evidence by the plaintiff in error.

2. ADVERSE POSSESSION.—Adverse possession of land sufficient to constitute title is not established by proof that the possession was open, uninterrupted and notorious. It may have been all of these and yet not exclusive or hostile.

3. APPEAL AND ERROR—*New Trial—Evidence to Support Verdict.*—If the jury with all the facts before them, under proper instructions from the court, have decided all the controverted questions in an action of ejectment in favor of the plaintiff, and their verdict has been approved by the trial court, it cannot be disturbed on writ of error, where the evidence certified is not so conclusive in favor of the defendant as not to support the verdict when viewed as upon a demurrer to evidence.

Error to a judgment of the Circuit Court of Middlesex county. Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

The following instructions were given by the trial court:

No. 1. "The court instructs the jury, to constitute an adverse possession of land, entry and possession under claim of right or title is required, and possession for any length of time of the land in the declaration mentioned by the defendant and those under whom he claims constitutes no title to the said land and is no bar to the plaintiffs' right of entry upon said land where such claim of right or title do not exist.

No. 2. "The court instructs the jury, that the possession requisite to bar the plaintiffs' right of action must be actual, exclusive, uninterrupted, visible, notorious and hostile and must continue during the whole period of statutory limitations, to-wit, for fifteen years prior to the institution of this suit, and such possession should have been taken under a claim of right or title at the beginning of said period.

No. 3. "The court instructs the jury, that the plaintiffs need not prove an actual entry on or possession of the premises demanded or receipt of any profit thereof, nor any lease, entry or ouster except such as may be especially provided by statute. But it shall be sufficient for them to show a right to the possession of the premises at the time of the commencement of this suit, and if the jury believe from the evidence, that the plaintiffs have shown their right to the possession of the premises at the time of the commencement of this suit they must find for the plaintiffs.

No. 4. "The court instructs the jury, that before the plaintiffs can recover in this action they must prove by satisfactory evidence their legal title and their immediate right of possession and that they cannot rely on any weakness or defects in the defendant's title but must rely entirely on the strength of their own title and right of possession.

No. 5. "The court instructs the jury, that if they shall believe from the evidence, that the description given of the land in the deed from Robt. McCandish, special commissioner in the chancery suit of *Perciful for &c.,* v. *Montague &c.,* is a mistaken description and does not designate the true boundary of the land intended to be conveyed, and shall further believe from the evidence that the 52½ acres of land claimed by the plaintiffs was intended to be conveyed by said deed, then the court instructs the jury, that said deed is sufficient to convey the legal title and they must find for the defendant.

No. 6. "The court instructs the jury, that if they shall believe from the evidence, that the defendant or those under whom

he claims have been in actual, exclusive, open, notorious and hostile possession of the land in the declaration mentioned under a color or claim of right for fifteen years next before the institution of this suit, then they must find for the defendant.

No. 7. "If the jury shall believe from the evidence, that the 52½ acres of land in the declaration mentioned was conveyed to R. L. Montague, trustee, by deed from Philip Montague and Thomas H. Montague, dated 26th of May, 1854, to secure the debt due J. C. Eubank and that the same is a part of the 80 acres mentioned in said deed; and shall further believe from the evidence, that the said R. L. Montague, the said trustee, did under and by virtue of a decree of the Circuit Court of Middlesex county, entered April 15, 1871, in the chancery suit of *Perciful &c.* v. *Montague &c.,* and in pursuance of the said deed sell the said 80 acres of land at public auction, and that A. H. Nieman became the purchaser of said 80 acres and the other lands of Phil Montague sold by said R. L. Montague as commissioner of the court under said decree, and that the said A. H. Nieman complied with the terms of such sale, and that the sale to him was duly reported to the court and confirmed by a decree of the court in said cause, then the court instructs the jury, that the right of possession vested in said Nieman from the date of the decree confirming the sale to him.

No. 8. "If the jury shall believe from the evidence, that the said land was afterwards, to-wit, on the 26th day of November, 1874, resold as the land of A. H. Nieman, and at his risk and cost under a decree of the Circuit Court of Middlesex county in the chancery cause of *Perciful &c.* v. *Montague &c.,* to pay the balance of the purchase money due from said Nieman, and that Jas. W. Fisher became the purchaser at such resale, and that said sale to said Fisher was confirmed by a decree of the said court in said chancery suit, then the court instructs the jury, that the right of possession to said land vested in said J. W. Fisher from the date of the decree confirming said sale.

No. 9. "If the jury shall believe from the evidence, that R. T. Gardner was afterwards, to-wit, by a decree entered in said

chancery cause March 28, 1879, substituted to all the rights of Jas. W. Fisher as purchaser of said land, then the court instructs the jury, that said R. T. Gardner became entitled to the possession of the said land from the date of said decree substituting him as purchaser.

No. 10. "The court further instructs the jury, that if they shall believe from the evidence, that R. T. Gardner, as substituted purchaser of the land sold by R. L. Montague, trustee and commissioner, under a decree of the Circuit Court of Middlesex county in the chancery suit of *Perciful &c.* v. *Montague &c.*, had fully paid the purchase money for the same to a commissioner of the court on the 23rd of August, 1882, then the said R. T. Gardner had right of immediate possession thereof from that date and they should find for the defendant.

No. 11. "The court further instructs the jury, that if they shall believe from the evidence, that the land in the declaration mentioned was sold by R. L. Montague, trustee and commissioner of the Circuit Court of Middlesex county in the chancery suit of *Perciful &c.* v. *Montague &c.*, and that R. T. Gardner became the purchaser of all the said land, or substituted in the place of the purchaser thereof, and that said R. T. Gardner fully paid the purchase money for the same, then said R. T. Gardner had immediate right of possession to said land from the date of such payment, and if they shall further believe from the evidence, that said R. T. Gardner took possession of said land as purchaser then his possession was adverse, and if the jury shall further believe, that he and those claiming under him have held open, exclusive, uninterrupted and hostile possession thereof for fifteen years next before the institution of this suit, then they must find for the defendant.

No. 12. "The court instructs the jury, that if they shall believe from the evidence, that the 52½ acres of land mentioned in the declaration was sold by R. L. Montague, trustee, under a decree of the Circuit Court of Middlesex county in the chancery suit of *Perciful &c.* v. *Montague &c.*, and that Thos. H. Montague, the father of the plaintiffs, was a party to the

said chancery suit, and if they shall further believe from the evidence, that R. T. Gardner was substituted as the purchaser of all of said land and that the said R. T. Gardner paid the purchase money for the said land in full to the commissioner, on or before the 23rd of August, 1882, then the decree entered in said chancery cause June 23, 1882, gave to the said R. T. Gardner the immediate right of possession from the date of his payment of the purchase money to the said commissioner, and the plaintiffs have no right of possession which entitles them to recover in this action."

*Thomas G. Jones* and *H. R. Pollard,* for the plaintiff in error.

*Evans & Evans,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

This was an action of ejectment, brought in the Circuit Court of Middlesex county by Thomas Montague and Lucy Powell (who was Lucy Montague), heirs at law of Thomas H. Montague, deceased, to recover a parcel of land containing 52½ acres, situated on the "Island," known as Montague's Island. James Gardner was made defendant, and upon his plea of not guilty a jury found for the plaintiffs. Gardner moved the court to set aside the verdict, but the court denied this motion, entered judgment upon the verdict; and a writ of error was awarded to that judgment by this court.

There is no question made here as to the correctness of the instructions given to the jury by the court. The only question open for our consideration arises upon the motion to set aside the verdict as contrary to the evidence, and in determining that question the evidence is to be regarded as upon a demurrer to the evidence.

The plaintiffs proved, in support of their title, that they were the children and heirs at law of Thomas H. Montague; that

the land in dispute was conveyed to Thomas H. Montague by two deeds, one from Philip Montague and wife, and one from Thomas J. Montague. That from Philip Montague and Frances Montague, dated the 1st day of January, 1843, conveys 25 acres of land by certain metes and bounds. The second deed is dated the 27th of February, 1854, in which Thomas J. Montague conveys to Thomas H. Montague as follows: "All his interest in a certain tract, piece or parcel of land lying in the upper part of Middlesex county on the Rappahannock river, adjoining the lands of Philip Montague, Mortimer Evans and Jos. C. Eubank, it being the land which the said Thomas J. Montague heired from his father, Thomas H. Montague, deceased, and two aunts, Melvina and Nancy Montague, supposed to contain fifty-five acres, be the same more or less (the interest being one-half; the other half owned by Robert H. Montague, the brother, and by him conveyed this day to Philip Montague), and the said Thomas J. Montague doth covenant to warrant generally the title to the interest in the land hereby conveyed." It appears, therefore, that under this deed Thomas H. Montague, the ancestor of the plaintiffs, took 27½ acres, which together with the 25 acres conveyed by the deed of 1843 makes the 52½ acres which is the subject matter of this controversy.

By deed dated the 20th of October, 1832, Edmond H. Montague conveyed to Philip Montague 83 acres of land, being a part of Montague's Island. And the court certifies that the land conveyed by the aforesaid deeds was all the land owned by Thomas H. Montague and Philip Montague on what was known as "The Island" or Montague Island; that the only dwelling-house on any of the tracts aforesaid, as far as the witnesses knew, was the one in which Philip Montague lived at the time of his death, and in which Thomas H. Montague lived until A. H. Nieman, the first purchaser took possession, and in which all subsequent purchasers, including the defendant, have since lived. By reference to the diagram hereto attached the relation of these several tracts will more clearly appear.

The 25-acre tract conveyed by the deed of 1843 lies to the extreme east; then comes the 27½-acre tract conveyed to Thomas H. Montague by the deed of 1854; to the west of that

the other moiety of the 55 acres, which the deed of 1854 recites was conveyed to Philip Montague; and still further to the west, and bounded by the lands of James Watts, appears the Philip Montague tract of 80 acres, with the dwelling-house upon it.

Gardner's defense was as follows: He vouches a record in a chancery suit brought by one *Joseph Perciful* v. *Thomas H. Montague,* the executor of Philip Montague, deceased, and others, from which it appears that in the lifetime of Philip Montague he and Thomas H. Montague, on the 26th day of May, 1854, executed to Robert L. Montague, as trustee, a deed conveying certain land amounting to 80 acres, to secure a debt therein named; that at the time of his death Philip Montague possessed considerable personal estate which passed into the hands of his executors, and considerable real estate which passed under the terms of his will to T. H. Montague, George W. Montague and other devisees; that during the lifetime of Philip Montague he and the said Thomas H. Montague had become indebted to the plaintiff; and the prayer of the bill is, that the accounts of the executors be settled and an inquiry made as to the real estate of Philip Montague and Thomas H. Montague with the liens upon the same and their priorities, if any existed. By the deed of trust referred to in this bill it appears that Philip Montague and Thomas H. Montague conveyed to Robert L. Montague the parcels of land situated on Montague's Island which passed by the deed of the 27th of February, 1854, from Thomas J. Montague to Thomas H. Montague and by another deed on the same day and year from Robert H. Montague to Philip Montague, and also a tract of land situated on the same island owned by Thomas H. Montague, containing 25 acres, and which is the same land referred to in the deed of 1843 from Philip Montague to Thomas H. Montague. The commissioner, to whom the cause was referred, took evidence to ascertain the lands of the defendants, in accordance with the decree, and reported the real estate left by Philip Montague to be 107½ acres valued at $15 per acre, which is without doubt tracts Nos. 1 and 2 on the diagram. On the 15th of April, 1871, the Circuit Court of Middlesex confirmed the report of the commissioner and directed Robert L. Montague, the trustee in the deed of trust from Philip

and Thomas H. Montague, to sell the land conveyed in the said deed and referred to in the commissioner's report, and which appears on the plat, as we have seen, as tracts Nos. 2, 3 and 4, together making 80 acres of land; and by the same decree R. L. Montague and L. C. Bristow were appointed commissioners to sell the lands of Philip Montague, which consisted, as we have already said, of 107½ acres of land, being the 80-acre house tract, and the 27½ acres under the Robert L. Montague deed of trust. It was the fact that this tract No. 2, containing 27½ acres which passed under the deed of trust to Robert L. Montague and is a part of the land decreed to be sold by Montague as trustee, was also embraced in the same decree and directed to be sold, subject of course to the deed of trust, by the commissioners, of whom Robert L. Montague was one, which has led doubtless to much of the confusion that appears in this record.

Robert L. Montague reported, as trustee and commissioner, that he had sold the house tract of 80 acres to one A. H. Nieman for $1,000, and the other parcel of land belonging to Philip Montague, containing 27½ acres, to the same purchaser for $521.25. There can be no doubt, we think, that the land embraced in this report comprises all the lands appearing on the diagram in the name of Philip Montague, being the house tract of 80 acres and the adjoining tract of 27½ acres, making together 107½ acres.

That sale was confirmed, but Nieman failed to complete the purchase by paying what was due by him into court. Thereupon the land was, on the 18th day of June, 1875, resold, and at this sale James W. Fisher became the purchaser, and the sale was confirmed to him by decree of the 18th of June, 1875.

On the 24th of February, 1879, Robert T. Gardner filed his petition and exhibits therewith, from which it appears that he had become the purchaser of Fisher's interest, and on the 28th of March, 1879, a decree was entered substituting Gardner as purchaser in the stead of J. W. Fisher, and by a subsequent

decree it was directed that a deed should be made to Robert T. Gardner upon payment in full of the balance due upon the land. On the 23rd of August, 1882, Robert McCandish, as commissioner in the chancery cause of *Perciful* v. *Montague,* reciting that Robert T. Gardner had paid in full for the land, conveys to him with special warranty of title, "that certain tract or parcel of land in the said cause mentioned called and known as 'The Island,' and containing about 107 acres, it being sold in gross and not by the acre. This is the land of which Philip Montague died seized and possessed, and lies in the upper part of Middlesex county on Rappahannock river."

From Robert T. Gardner, grantee of Robert McCandish, the possession and such title as he had passed through Augustin Garrett, Fleming and others to James Gardner, the plaintiff in error.

Recurring again to the plat, and recalling the several deeds which have been set forth, it seems certain that the land in controversy is composed of the two tracts of 25 and 27½ acres, and that the 107½ acres which passed by the deed of Robert McCandish to Robert T. Gardner comprises the 80-acre house tract and the 27½ acres, both of which appear in the name of Philip Montague.

The defendant has not shown a legal title to the land he claims; his defense must therefore rest upon his possession under claim or color of title. He contends that a mistake was made in the description in his deed. That may be so, but that question was submitted to the jury, and they have found against that contention. He claims that without respect to his paper title, his possession has been such as to give him full protection. That question was also fairly submitted to the jury, and its decision was against him.

The court correctly instructed the jury, "that if they shall believe from the evidence that the defendant, or those under whom he claims have been in actual, exclusive, open, notorious and hostile possession of the land in the declaration mentioned

under a color or claim of right for fifteen years next before the institution of this suit, then they must find for the defendant."

Now, conceding that the defendant was in under a claim or color of right, let us look for a moment to the proof as to the other requisites set forth in this instruction.

The court certifies as among the facts proved, "that A. H. Nieman exercised acts of ownership and took possession of all that part of the land situated on the island, which is commonly known as the "Island" or "Montague's Island" from Powell's line on the east to Watts' line on the west, and from the Rappahannock river on the north to Mud creek on the south; that T. H. Montague gave up the place when Nieman came into possession, moved away and never afterwards lived upon the premises; that James W. Fisher, R. T. Gardner, Augustin Garrett, Fleming and the defendant, subsequent purchasers of the land, all occupied the same house, Garrett by tenants, after their respective purchases, and exercised ownership over all the land; that there were some small log houses on the land in dispute, in which the tenants of the said purchasers lived; that R. T. Gardner built some small houses on the same land, which he rented to oystermen; that the possession of the said land by all the aforesaid purchasers was open, uninterrupted and notorious; that the defendant did not know how much land was in the tract when he purchased of Fleming, but did know the land occupied by R. T. Gardner and others, and knew it had been sold in gross and thought he was buying the whole tract and accordingly took possession of it all; that Thomas H. Montague came on the premises when his wife died and selected a spot for her grave, and said to the witness who was helping to bury his wife, 'bury me here when I die, this is all the land I have here,' the burying ground being on the house tract."

If the jury, upon that evidence, had found for the defendant, under all the circumstances disclosed in this case, it might be that we could not have disturbed its verdict; but the jury,

under proper instructions, saw fit to find for the plaintiff, and the only question for us to decide is whether or not the evidence in the record is so conclusive in favor of the defendant as not to support the verdict of the jury, when viewed as upon a demurrer to evidence.

The possession of the purchasers was, under the certificate of facts, "open, uninterrupted and notorious." It may have been open, uninterrupted and notorious and yet not exclusive or hostile. It may very well have been that it was land of little value, and that the acts of ownership exercised by the defendant and those under whom he claims were permissive and not adverse. But it is not for us to speculate or to indulge in conjecture. What the law requires is plain, and it is equally plain that the proof does not measure up to the standard prescribed by law. The jury, with the whole case before them, under proper instructions, decided all the controverted questions in favor of the plaintiff; their verdict was approved by the trial court, and cannot be disturbed upon a writ of error.

*Affirmed.*