Syllabus.

## Staunton.

## CUMBEE AND OTHERS V. RITTER.

September 19, 1918.

Absent, Burks, J.

1. INJUNCTION—*Demurrer—Trespass on Land—Cutting Timber.*—A bill to enjoin defendants from cutting and removing timber, which shows a *prima facie* title in the complainant, the destruction of timber of special value and reasonably necessary for farm uses, and alleges the insolvency of the defendants, is not demurrable.

2. EQUITY—*Jurisdiction—Title and Boundaries of Land—Trespass.*— The general rule is that in the absence of some peculiar equity arising out of the conduct, situation or relation of the parties, courts of equity are without jurisdiction to settle disputes as to title and boundaries of land. But where the act done or threatened to be done would be destructive of the substance of the estate, or if repeated acts of wrong are done or threatened to be done, or the injury is or would be irreparable, whenever, indeed the remedy at law is or would be inadequate, a court of equity will put forth its restraining hand and enjoin the perpetration of the wrong and prevent the injury.

3. ADVERSE POSSESSION—*Hostile and Exclusive Possession.*—The occupancy which is necessary to support a claim of title by adverse possession must be both hostile and exclusive.

4. EQUITY—*Jurisdiction—Title and Boundaries of Land.*—In a suit to enjoin a trespass on land in cutting and removing timber, where both parties claim title and possession and both are exercising acts of ownership, and one fails to establish even a *prima facie* case, in the interest of peace, law and order an equity court should take jurisdiction; and in the instant case the trial court properly determined the question raised against the defendant's contention, which rests upon a claim of title, which is entirely unsustained, if not negatived, by the evidence introduced to support it.

5. APPEAL AND ERROR—*Judgment on Appeal—Judgment Without Prejudice—Res Judicata.*—In the instant case, in view of the fact

that the record suggested the possibility that the defendants were overconfident in their view that a court of equity had no jurisdiction, and, therefore, failed fully to present the evidence upon which they relied in support of their claim of title, the decree of the lower court was affirmed by the Supreme Court of Appeals, without prejudice to the right of the defendants hereafter to assert their title to the property in an action of ejectment, if they should be so advised.

Appeal from a decree of the Circuit Court of Giles county. Decree for complainant. Defendants appeal.

*Amended and affirmed.*

The opinion states the case.

*W. B. Snidow,* for the appellants.

*Williams & Farrier,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

P. H. Ritter filed his bill against Henrietta Cumbee, Luther Cumbee and Gilbert Cumbee, alleging that he was the owner in fee simple of a tract of land containing 318 acres, more or less, the title to which he acquired by deed which he filed as an exhibit with the bill; that he and his predecessors in title had been in the possession thereof for more than twenty years, except a small parcel of about one acre, which had been enclosed and occupied by Henrietta Cumbee for many years, the title to which parcel had been awarded to her in an action of ejectment which he (Ritter) had brought against her; that the defendant, Henrietta Cumbee, and her sons, the other two defendants, acting as her agents, had trespassed upon his land and cut down valuable timber trees which they were preparing to haul off the

57

land and appropriate to their own use; that said defendants were insolvent; that they had no claim of title to the land upon which they were thus trespassing; that the timber was of special value to him because there was only a small quantity of merchantable timber on the farm, certainly not more than enough for farm uses, so that if defendants were permitted to continue cutting it, he would suffer irreparable injury; and there was a prayer for an injunction and general relief.

The defendant, Henrietta Cumbee, filed her separate demurrer and answer to the bill. The answer denied every allegation in the bill, except the cutting down of the trees, which she says were few in number, were intended to be cut into lumber for the purpose of repairing buildings now on the land or to build new ones thereon, and that the cutting of these few trees resulted in no appreciable injury to the property and are not worth more than $10.00. She further alleged that she is the owner of eighty acres of land upon which such timber grew, describing said land by metes and bounds, and that she has been in the actual, open, notorious, visible, exclusive, hostile and undisputed possession thereof for a period of thirty years, during which time she has claimed the land, honestly believing it to be hers, and that though she has been much harassed by suits and actions in regard to it, she has successfully repulsed every effort to wrest the possession thereof from her. She also alleges and proves that Neel, from whom the complainant bought his land, instituted an action of ejectment in the Circuit Court of Giles county against the defendants for this eighty acres of land, and that after some of the evidence had been introduced.for the plaintiff and before any evidence had been introduced by the defendants, the plaintiff asked permission to suffer a nonsuit, to which the defendant made no objection, and that action was thus ended; that after the complainant acquired title he brought another action of eject-

ment for the small part of the tract containing about one acre, which the defendants had enclosed and lived upon for many years, and in that action there was a verdict in favor of the defendant, Henrietta Cumbee, and her title to this part of the land is thereby assured; and she avers that the same defense which availed her in the said action of ejectment is available as a defense if the complainant should bring an action of ejectment for the remainder of the eighty acre tract.

Neither party referred to or relied upon the amendment to section 3058 of the Code, Acts 1912, page 77.

The demurrer to the bill was properly overruled. Inasmuch as the bill shows a *prima facie* title in the complainant, the destruction of timber of special value and reasonably necessary for farm uses, and alleges the insolvency of the defendants, it is not demurrable. The general rule is that in the absence of some peculiar equity arising out of the conduct, situation or relation of the parties, courts of equity are without jurisdiction to settle disputes as to title and boundaries of land. Ann. Cas. 1915 A, note, p. 354. In this State, in the following cases it was determined that the chancery court had no jurisdiction to settle the controversy: *Stuart's Heirs* v. *Coalter,* 4 Rand (25 Va.) 74, 15 Am. Dec. 731; *Lange* v. *Jones,* 5 Leigh (32 Va.) 192; *Carrington* v. *Otis,* 4 Gratt. (45 Va.) 235; *Steed* v. *Baker,* 13 Gratt. (54 Va.) 380; *Manchester Cotton Mills* v. *Manchester,* 25 Gratt. (66 Va.) 825; *Collins* v. *Sutton,* 94 Va. 128, 26 S. E. 415; *Sulphur Mines Co.* v. *Boswell,* 94 Va. 480, 485, 27 S. E. 24; *Callaway* v. *Webster,* 98 Va. 790, 37 S. E. 276; *Deane* v. *Turner,* 113 Va. 237, 74 S. E. 165; *Litz* v. *Rowe,* 117 Va. 752, 86 S. E. 155, L. R. A. 1916 B, 799.

On the other hand, this court has in several recent cases decided that such peculiar equity existed as gave the chancery court jurisdiction, and the entire controversy has been settled in such suits.

In *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337, Riely, J., says:

"It is very true that a court of equity will not, as a general rule, interpose in the case of a mere naked trespass. There must be something more to call forth its interference. But where the act done or threatened to be done would be destructive of the substance of the estate, or if repeated acts of wrong are done or threatened to be done, or the injury is or would be irreparable, whenever indeed the remedy at law is or would be inadequate, a court of equity will put forth its restraining hand and enjoin the perpetration of the wrong and prevent the injury. 3 Pomeroy's Eq. J., sec. 1357; 1 High on Injunctions (3d ed.), secs. 697, 702; 3 Story's Eq. J., sec. 928; *Livingston* v. *Livingston,* 6 Johns. Ch. (N. Y.) 497, 10 Am. Dec. 353; *Switzer* v. *McCulloch,* 75 Va. 777; *Rakes* v. *Rustin L., M. & M. Co.,* 22 S. E. 498, 2 Va. Dec. 156."

"It has accordingly been held, upon the ground of the inadequacy of the remedy at law, that an injunction will lie in the case of a trespass, where the trespasser is pecuniarily irresponsible. 1 High on Injunctions, sec. 356; *Musselman* v. *Marquis,* 1 Bush. (Ky.) 463, 89 Am. Dec. 637; *Spear* v. *Cutter,* 5 Barb. (N. Y.) 486; *Malry* v. *Norton,* 100 N. Y. 424, 3 N. E. 581, 53 Am. Rep. 206; *Webb* v. *Harper,* 38 Ga. 641; *Hicks* v. *Compton,* 18 Cal. 206, and *Morgan* v. *Palmer,* 48 N. H. 338. While mere insolvency would not generally be decisive of the right to grant an injunction, it constitutes in particular cases an important element in determining whether the court in the exercise of a sound discretion should award it, for, the trespasser being insolvent, the legal remedy, 'though theoretically perfect, would be practically fruitless.' "

In *Miller* v. *Wills, supra,* the alleged trespassers were non-residents of Virginia.

This doctrine has been approved and enforced in *Morison* v. *American Association, Inc.,* 110 Va. 93, 65 S. E. 469; *Moorman* v. *Lynchburg,* 113 Va. 90, 73 S. E. 987; *Woolfolk*

v. *Graves,* 113 Va. 182, 69 S. E. 1039, 73 S. E. 721; *Ely* v. *Johnson,* 114 Va. 31, 73 S. E. 748. The contrariety of the decisions arising because of the difficulties of applying the rule to the facts of particular cases are indicated in the elaborate note to *DePauw* v. *Oxley,* 122 Wis. 656, 100 N. W. 1028, found in 13 L. R. A. (N. S.) 173; and in the note to *Jerome* v. *Ross,* 7 Johns, Ch. (N. Y.) 315, 11 Am. Dec. 498. In the cases of *Moorman* v. *Lynchburg, supra,* and *Woolfolk* v. *Graves, supra,* this court granted complete relief, and adjudged that the defendants were not entitled to jury trials because their own evidence failed to show that they had *prima facie* titles to the land in controversy, and that their assertion of title thereto was not *bona fide.*

The evidence in this case shows that the controversy has been one of long standing, and that each of the parties has been exercising certain acts of ownership under claim of title and possession of the land in controversy, inconsistent with, and in hostility to, the claims asserted by the other. Within the year previous to the institution of this suit the complainant had sworn out a crminal warrant against Henrietta Cumbee, charging her with trespass on the land, which had been dismissed. The defendants in their answer only claimed the title by adverse possession. It is true that there is an allusion to a claim by defendants under deed in the complainant's evidence, but the defendants did not claim under it, produce it, or indicate its contents. It appears that Henrietta Cumbee has lived for many years in a house which is upon the one acre of the land, which is enclosed, and which she has recovered in ejectment; and that she has claimed and pastured her cattle and hogs upon the land here in controversy for several years and exercised other acts of ownership thereon. She relies upon the doctrine that a court of equity has no jurisdiction to enjoin a mere trespass or to settle a mere question of title to land.

On the other hand, the evidence of the complainant shows

that he and his predecessors have pastured a very much larger number of cattle on the land in controversy, has by a tenant cultivated part thereof, and tends to show that his predecessors in title collected rents from the defendants for pasturing their stock thereon, and that he and his predecessors have had possession thereof. He exhibits his deed, which apparently covers the land in controversy.

Upon this evidence the court entered a decree perpetually enjoining and restraining the defendants from cutting and removing any timber from the tract of land described in the bill, and from otherwise trespassing thereon. From that decree the defendant, Henrietta Cumbee, appealed. So that the question is whether a court of equity should take jurisdiction of such a controversy.

While the principles governing this class of cases have been many times announced, and may be regarded as settled in Virginia, it is nevertheless difficult to apply them to the facts of this particular controversy.

In view, however, of the fact that the defendants relied solely upon their claim of title by adverse possession and failed to establish *prima facie* case (for their own evidence fails to show that they have had exclusive and hostile possession of the land here in controversy) should the court have dismissed the bill as presenting a mere controversy as to the title to the land, which could only be properly settled in an action of ejectment; or is this a case in which the chancery court properly took jurisdiction and granted the relief to which, upon the evidence submitted, the complainant is entitled?

The defendants only introduced two witnesses, and it is impossible to construe their testimony as making out a *prima facie* case in favor of the title by adverse possession set up in the answer. They not only failed to sustain the claim that the defendant, Henrietta Cumbee, "has been in the actual, open, notorious, visible, exclusive, hostile, undis-

puted and continuous possession for a period of thirty years," but there is much in their testimony which supports the allegation of the bill, that the complainant and his predecessors in title were in possession of the property during the period in which she was also claiming it. Had the same evidence been introduced by a plaintiff in an action of ejectment, it would have been proper for the court to sustain a demurrer thereto. The occupancy which is necessary to support a claim of title by adverse possession must be both hostile and exclusive. *Austin* v. *Minor,* 107 Va. 109, 57 S. E. 609; *Gardner* v. *Montague,* 108 Va. 202, 60 S. E. 870; *Whealton* v. *Doughty,* 112 Va. 649, 72 S. E. 12; *Providence F. Club* v. *Miller Co.,* 117 Va. 129, 83 S. E. 1047.

In a case like this, where both parties claim title and possession and both are exercising acts of ownership, and one fails to establish even a *prima facie* case, we are of opinion that in the interest of peace, law and order the equity court should take jurisdiction; and that in this case the trial court properly determined the question raised against the defendant's contention, which rests upon a claim of title, which is entirely unsustained, if not negatived, by the evidence introduced to support it. In view, however, of the fact that the record suggests the possibility that the defendants were overconfident in their view that the court of equity had no jurisdiction, and, therefore, failed fully to present the evidence upon which they relied in support of their claim of title, we are not disposed to close the door of opportunity to them. The decree will, therefore, be affirmed, without prejudice to the right of the defendants hereafter to assert their title to the property in an action of ejectment, if they shall be so advised.

*Amended and affirmed.*