# Richmond.

## BATH HARDWOOD LUMBER COMPANY v. BACK CREEK MOUNTAIN CORPORATION.

### November 13, 1924.

1. POWERS—*Seal—Creation of Trust—Conveyance of Land under Power not under Seal.*—A power of attorney not under seal gives no power to create a trust in or to convey the principal's real property.

2. ATTORNEY AND CLIENT—*Good Faith of Attorney—Conveyance to Attorney—Trust in Favor of Client.*—Where land, the ownership of which is claimed by his client, is conveyed to an attorney, the attorney takes it in trust for his client.

3. EQUITY—*Suit to Quiet Title—Suit to Establish a Constructive Trust—Jury Trial—Section 6248 of the Code of 1919—Case at Bar.*—In the instant case issue was taken upon the question of whether the suit was primarily for the purpose of establishing a constructive trust in appellant or whether it was primarily a suit to remove alleged clouds upon the title of appellee. The gist of the bill was the fraud of an attorney and his faithlessness to his client's trust arising out of his contracts and conveyances for his own benefit, under which the appellant claims, and to cancel and annul these conveyances. Appellant insisted that it was a mere bill for the removal of clouds maintainable only under section 6248 of the Code of 1919 and therefore he was entitled to a jury trial.

   *Held:* That the bill was both a bill to declare a resulting trust based upon fraud and to quiet title, and that no mere emphasis as to which was primary and which was secondary could be allowed to defeat the jurisdiction of a court of equity, and that section 6248 of the Code of 1919 was never intended to destroy this jurisdiction.

4. EQUITY—*Jurisdiction—Fraud—Resulting Trust—Section 6248 of the Code of 1919.*—It was never intended, either by section 6248 of the Code of 1919, or by the cases which have construed it, to deny to a court of equity jurisdiction either to relieve against fraud or to declare and enforce trusts resulting therefrom.

5. EQUITY—*Title and Boundaries—Section 6248 of the Code of 1919.*—Except when the relief which is authorized by Code 1919, section 6248, is sought, and in the absence of some peculiar equity, courts of equity are without jurisdiction to settle disputes regarding the title and

boundaries of land. The exceptions are as well established as the rule.

6. JURY—*Denial of Jury Trial—No Conflict in the Evidence.*—A denial of trial by jury in an equity cause is not harmful, where, as to the decisive facts in the case, there is no substantial conflict in the testimony, the controlling facts being established by written contracts, letters, admissions, and pleadings in the record, so that the jury could have reached no other conclusion than that arrived at by the court.

7. VENDOR AND PURCHASER—*Bona Fide Purchaser—Purchase from Attorney of Client's Property with Knowledge of the Fiduciary Relationship.*—One who purchases the property of a client from his attorney with full knowledge of the existing fiduciary relationship and of the attempt of. the attorney to profit at the expense of his client is not an innocent purchaser for value without notice.

8. EQUITY—*Maxims—Clean Hands—Paying Off Liens—Case at Bar.*—In the instant case it was urged by appellant that the appellee did not come into court with clean hands; as during the pendency of a previous litigation the appellee and those under whom it claims paid off the liens against the property in question, and thus obtained the right to have that litigation dismissed. This appellant styled a fraud upon the jurisdiction of the court.

*Held:* That there was no merit in appellant's contention.

9. EQUITY—*Pleading—Fraud—Averments—Clean Hands.*—It is not wrong to secure titles to lands for one's own benefit; nor to have such titles conveyed to a corporation of one's own creation. If such acts are wrong and fraudulent, the facts must be pleaded showing why they are so. Such conduct, when not wicked and fraudulent in itself, cannot be made so merely by using the terms fraudulently and collusively in describing it, but facts must be stated showing why such conduct is wrongful and wicked.

10. EQUITY—*Witnesses—Right to Cross-Examine—Harmless Error—Case at Bar.*—In a suit in equity a witness, on cross-examination, admitted his interest in the litigation and refused to answer certain questions relative thereto. Before the case was heard, however, he filed answers to these questions, and this was accepted by the court as sufficient.

*Held:* That this action of the court was subject to criticism but in the instant case was harmless, because it was not probable that further cross-examination would have developed any additional facts, and because the witness's testimony could be disregarded without affecting the result.

11. WITNESSES—*Bias—Interest—Cross-Examination.*—A party has the right not only to show the interest and bias of a witness, but, in order to determine the weight of his testimony, has the right to a full dis-

closure, and to cross-examine the witness within proper limits as to the details and extent of such interest.

12. Attorney and Client—*Trusts—Parties Dealing with Attorney with Notice of Relationship—Case at Bar.*—In the instant case appellant claimed title to the property in question under a conveyance from an attorney of appellee's predecessor in title. Appellant had full knowledge of the fiduciary relationship and the attorney's lack of good faith. Therefore, every act of the attorney as attorney, every contract made and every conveyance received by him, as well as the alleged possession of the appellant under such deeds and contracts, inured to the benefit of the appellee. It follows that whatever title or interest, if any, which the appellant acquired in consequence thereof, charged as appellant, was with notice of the attorney's agency and lack · of good faith, is held by it as trustee for the benefit of the appellee.

Appeal from a decree of the Circuit Court of Bath county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Geo. A. Revercomb* and *Timberlake & Nelson,* for the appellant.

*Williams & Mullen,* for the appellee.

Prentis, J., delivered the opinion of the court.

We state certain facts antecedent to this litigation, not because we think they materially affect the precise legal propositions here involved, but because they are relied upon by the appellant, recited by the appellee, and are enlightening because they show the previous relations of the parties to each other and to the subject · matter.

·. Robert Patton, Jr., secured a patent to 45,000· acres of land in what is now Bath and Highland

counties, Virginia. Some time prior to 1903, H. H. Achenbach and others acquired title to 30,000 acres, more or less, thereof, by several deeds from Fidelity Title and Trust Company and Frank Cox, trustee, and on March 20, 1903, conveyed it as one tract to Achenbach, reserving a vendors' lien to secure $67,000.00 of principal notes. December 31, 1903, Achenbach conveyed the property to the Hot Springs Lumber and Manufacturing Company, the vendee assuming the vendors' lien notes.

P. V. Rovnianek & Company acquired at least ninety-five per cent of the stock of the Hot Springs Lumber and Manufacturing Company. In order to purchase this stock and to develop the property, Rovnianek & Company borrowed about $275,000.00 from the Bank of Tatra, located in that part of Hungary which is now Czecho-Slovakia, of which bank Ivan Daxner was president. In 1909, the lumber company found itself unable to pay its debt to Rovnianek, and Rovnianek in turn was unable to pay his debt to the Bank of Tatra. These being the circumstances then, the lumber company conveyed all of its property to Rovnianek by deed of March 23, 1909, which was duly recorded, and both the litigants here undertake to trace their title to the lumber company.

Daxner assumed full responsibility to the bank, made over his own property to it, and for his protection this 30,000 acres was conveyed to Daxner by Rovnianek and wife by deed dated March 24, 1909, duly recorded August 9, 1909, in Bath county. Sundry suits had been brought by parties holding claims against the lumber company or claiming parts of the land by adverse possession, or under other titles. Numerous judgments had been secured and suit had been brought in 1908, by one Hadfield, claiming to own the unpaid

284 Bath Lbr. Co. *v.* Back C'k M. Corp., 140 Va. 280.

vendors' lien notes of Achenbach, to subject the property to the payment thereof. The company was contesting that suit on the ground of deficiency in acreage called for in the deed of March 20, 1903, and because of certain clouds on the title, and that litigation was pending when the property was conveyed to Daxner in 1909.

Daxner lived in Hungary, did not speak the English language and was unacquainted with legal procedure in this country. Rovnianek had employed attorneys for Daxner, and on March 11, 1911, before a decision in the vendors' lien suit, they instituted a suit in the name of Daxner against the lumber company and all the other parties to the former suit, claiming that he had acquired and then owned the property. These two suits were consolidated and thereafter were heard together.

Then on May 8, 1911, Daxner gave a power of attorney to one Peter Kompis, also a foreigner, unacquainted with the English language and with legal procedure in this country, and sent him here to look after and handle the property. This power of attorney was not under seal, and Kompis was, therefore, without power to execute a deed. Kompis appears to have been dissatisfied with the progress of the litigation, and consulted attorneys at Pittsburgh, who advised him to employ other attorneys in Virginia, or attorneys in New York acquainted with Virginia land laws. He sought one Archibald Palmer, in New York, who undertook to conduct all the Virginia litigation, provided William Hawkins, also an attorney, should be employed and the case left for the personal attention of Hawkins. There was a written contract for such employment, dated October 29, 1922, between Kompis, on behalf of Daxner, and Palmer and Hawkins, whereby they under-

took to clear up the title of the property represented in the litigation for account of Daxner as his attorneys. Hawkins claimed to be of Arlington, Virginia, and described himself as a member of the bar of Virginia. He represented to Kompis that it would be necessary to place the title in an American in order to conduct the litigation, and, therefore, that it should be put in his (Hawkins') name as trustee. Thereafter Kompis executed two and possibly three instruments which Hawkins had prepared, each of which purported to convey progressively greater interests in the property to Hawkins as trustee, until the last one, which purported to convey it in fee simple, to Hawkins, subject only to a trust to secure $10,000.00 to the Bank of Tatra. These papers, dated severally December 4, 1912, February 14, 1913, and April 30, 1913, he placed on record at various times between December, 1912, and July, 1916. Hawkins gave no consideration for these conveyances, and it is apparent that they were all, as a matter of law, in trust for, or subject to cancellation by, his client for whom he was thus acting as attorney.

[1] Two obstacles to the acquisition by Hawkins of the fee simple are apparent—one that the power of attorney held by Kompis from Daxner was not under seal, the other that it gave no power to create a trust or to convey his principal's property in this manner. One of these difficulties Hawkins attempted to overcome by withholding or secreting the original power of attorney and causing a false translation thereof to be made, which made it appear to be an instrument under seal, which false copy was recorded instead of the original. This original was later produced as evidence in this case. Thereafter, on August 3, 1917, there was placed on record a deed from the Hot Springs Lumber and Manufacturing Company to Hawkins, dated four years

earlier, namely on January 31, 1913. It is observed also that this deed was itself dated four years after the lumber company had, in 1909, already conveyed the property to Rovnianek by the deed hereinbefore mentioned, and that Rovnianek had conveyed it to Daxner.

[2] It is here noted that during all this time Hawkins was attorney for Daxner, and so, even if there had been then any outstanding interest left in the lumber company, Hawkins took it in trust for his client.

From the date of his employment in 1912 to October, 1917, Hawkins was active in the Virginia litigation pending in Bath county, filing as counsel for Daxner numerous pleadings in the suits already pending. In all of these papers he asserted Daxner's ownership of the property and his own relation thereto as attorney for Daxner. So little progress was made in disposing of that litigation that Daxner came to this country prior to 1916, and in April, 1916, called on Hawkins for an account of his stewardship. By an agreement between Hawkins and Daxner, dated April 11, 1916, Palmer was eliminated, and in a supplemental agreement Hawkins "promises and covenants that he as sole counsel for said Ivan Daxner will prosecute" the litigation, etc., and "to the best of his learning and ability protect and defend the ownership of said Ivan Daxner in said land." Thereafter no better progress was made and after an investigation through Paul Bukva, the Austro-Hungarian diplomatic representative in this country, Daxner revoked the Kompis power of attorney and made demand for a settlement.

Then Daxner and wife, by deed dated May 27, 1917, recorded June 29, 1917, conveyed the property to Kolar, who thereafter conveyed it to the appellee, Back Creek Mountain Corporation, which was organized for the purpose of taking the title. Kolar, as the representa-

tive of Daxner, reached an agreement with Hawkins and took a deed for the property from him, individually and as trustee for all who might claim under him, this deed being dated June 20, 1917, recorded June 22, 1917. Kolar, holding already the conveyance from Daxner noted above, then conveyed the property to the Back Creek Mountain Corporation, the appellee. Daxner then owning all the sitock of the Back Creek Mountain Corporation, exchanged one-half thereof for one-half of the stock of the Jackson River Corporation, which owned an adjoining tract of land, which was subsequently sold for $125,000.00, and thereby secured the money to pay the vendors' lien notes on the property which was then in litigation and other claims against the property.

During this period Hawkins was making various efforts to sell or raise money on the property, and in April, 1916, while he was reassuring Daxner and in writing reaffirming his duty to him as his attorney, he was in negotiation with S. M. Croft and E. A. Williams, who together with Hawkins composed the appellant here, Bath Hardwood Lumber Company, and these three organized this company, and sought to acquire the property for their own profit and benefit, Hawkins and Croft alternating as president of the Bath Hardwood Lumber Company until Hawkins died, in 1919.

In November, 1916, Hawkins gave the appellant, Bath Hardwood Lumber Company, an option which was not exercised. Nothing had been consummated by Hawkins and his associates with reference to the 30,000 acres here involved at the time Hawkins, in June, 1917, conveyed to Kolar, as the representative of Daxner, all interest he, Hawkins, might appear to have in the property by virtue of the Kompis deed, or in any capacity whatsoever. Hawkins was thereby di-

vested of his title. Nevertheless, thereafter, on July 14, 1917, he executed a quit-claim deed to the appellant, Bath Hardwood Lumber Company, of which Hawkins was then president, and twelve days later executed a similar deed, recorded August 3, 1917. These deeds were executed and recorded, as it appears, nearly a month after Hawkins had conveyed to Kolar, Daxner's representative, any and all interest he might have therein, and no consideration whatever is shown to have been paid therefor.

Croft, in 1916, while he was negotiating with Hawkins, had an elaborate abstract of title made which recited the history of the property, with copies of the papers in the litigation in which the property was then involved, in which Hawkins' relation to the property as attorney for Daxner, its owner, is fully set out. On the date of the execution of the deed of July 14, 1917, Croft and Williams united with Hawkins as the three stockholders of the appellant company in a shameless written repudiation of the legal and moral obligations of Hawkins to his client, in which it is declared that Hawkins was not to be considered as holding the stock of the Bath Company with which they paid for the property, either as trustee for Daxner or for any one else. This paper was not discovered until after the death of Hawkins, in 1919, and contains an agreement for distribution between Hawkins, Croft and Williams, which ignores all the rights of Hawkins' client, Daxner.

The creditors and lienors hereinbefore referred to having been satisfied, those suits were dismissed and that litigation finally disposed of in November, 1919.

This brings us to this case. The Back Creek Mountain Corporation, appellee, filed its bill in November, 1920, in which it secured a favorable decree in accord-

ance with the prayer of the bill, and it is that decree which is here under review.

[3-5] For the appellee (employing the language of its brief) it is claimed that "this is a suit primarily to declare and establish a constructive trust and decree the execution of the trust so established, and incidentally to cancel sundry instruments;" whereas, for the appellant it is claimed that this reverses the actual situation as disclosed by the bill, and that the truth is that the suit is primarily to remove alleged clouds upon the title and incidentally to establish a trust against the appellant's title in order that its title thereby might be shown to be a cloud upon appellee's title. This presents the issue which is elaborately argued on both sides, and as is apparent, is a mere question as to where the emphasis should be placed—that is, whether the suit is primarily for the purpose of establishing a constructive trust in Hawkins and the appellant, claiming as his assignee, or whether it is primarily a mere suit to remove alleged clouds upon the title raised by Hawkins' contracts and conveyances.

Turning to the bill, which recites the preceding litigation with considerable detail and Hawkins' connection with the property as attorney for Daxner, the 13th paragraph alleges:

"Complainant is advised and charges that even if it were possible for an equitable interest to have been acquired by Hawkins under the instruments executed by said Kompis under said unsealed power of attorney, as distinguished from the legal title which could be acquired only by a deed executed pursuant to a power of attorney under seal, and even if it were possible through said chain of deeds, following the deeds from Kompis, for anything to have passed to the Bath Hardwood Lumber Company, it would have been, at most,

a mere equitable title, and the said Bath Hardwood Lumber Company, having knowledge, as hereinbefore shown, that the said Daxner was the real owner of the said property, and that the said Hawkins was the attorney for the said Daxner and could not acquire any real interest in said property, thus had notice of the prior equity of the said Daxner and his successors in title on the one part and the Bath Hardwood Lumber Company on the other part, such prior equity of the said Daxner would prevail over the equitable title of the Bath Hardwood Lumber Company; that this is equally true even if the Bath Hardwood Lumber Company had had no knowledge of the interest or equity of the said Daxner, because the said Bath Hardwood Lumber Company, whatever else it did know or did not know, knew from the record this one thing, viz.: That said power of attorney was not under seal and that, therefore, under said power of attorney it could secure only an equitable title and, therefore, took such equitable title subject to any prior equity that it might develop existed, whether said company had prior notice of the existence of such prior equity or not at the time it took its alleged deed, or made its alleged contract, and consequently in any contest between it and the said Daxner the prior equity of the said Daxner must prevail.

"Complainant charges that over and above the infirmities existing and heretofore set forth in said contract of November 3, 1916, made by the said Hawkins in sundry capacities with the Bath Hardwood Lumber Company, and in the alleged deeds likewise made by said Hawkins in sundry capacities to said Bath Hardwood Lumber Company, there stands for the vital and fatal infirmities, hereinbefore referred to by complainant, of the abuse of the fiduciary relation existing be-

tween Hawkins, the attorney, and Daxner, the client, *were acquired by him* and while the alleged contracts and deeds between the said Hawkins and the Bath Hardwood Lumber Company, and sundry corporations created by Hawkins, were executed; of the trust thereby resulting and impressed on said property in favor of said Daxner, and of the knowledge of the Bath Hardwood Lumber Company of said trust and of the condition giving rise to said trust, and as a result of which vital infirmity any possible claim of title or color of title, legal or equitable, that might appear to rest in Bath Hardwood Lumber Company by reason of the acts of said Hawkins, are impressed with a trust in favor of the said Daxner and of your complainant, as the successor of said Daxner."

And in the 14th paragraph it is averred "that the Bath Hardwood Lumber Company not only had such notice as would put it upon inquiry as to the true nature of the alleged title of said Hawkins to the said property and of his fraudulent dealings with the property of his client, but it had actual notice of the nature of said title and of said fraudulent acts; and in this connection complainant calls attention to the following facts, some of which have been set forth in more detail above," and then avers the various contracts which Hawkins made with the appellant, the Bath Hardwood Lumber Company, and other circumstances which, if true, show actual notice of and participation in the fraud alleged.

The prayer of the bill is, first, that the instruments purporting to be contracts or deeds under which the Bath Hardwood Lumber Company is claiming the land herein described, and owned by complainant, may be declared null and void; and may be cancelled, annulled and stricken from the records of Bath county, reciting

them; second, "complainant further prays that any and all other alleged contracts, deeds, or instruments, constituting or purporting to constitute muniments of title in the Bath Hardwood Lumber Company in and to said tract of land or to any right or interest therein, or purporting to convey any interest in said land to the Bath Hardwood Lumber Company, obtained from said William Hawkins in his own right, or in any capacity, may be declared null and void and may be cancelled, annulled and stricken from the record; and that all clouds constituted by said alleged contracts, deeds, or other instruments, be removed from the title of complainant to said land and that the cloud constituted by the claim of said Bath Hardwood Lumber Company be likewise removed from the title of complainant;" third, "complainant further prays that the court do establish and decree that such title or interest, if any, in said 30,000 acre tract of land and 800 acres of mineral rights as may have been acquired by the Bath Hardwood Lumber Company from the said Hawkins in any capacity whatsoever, was and is held, if at all, as trustee for complainant as the successors of Ivan Daxner, and that the Bath Hardwood Lumber Company holds no title thereto for its own use or benefit, and that the Bath Hardwood Lumber Company be required to reconvey to complainant all its interest acquired by said Bath Hardwood Lumber Company, if any, from or through William Hawkins acting in any capacity whatsoever."

The appellant insists that this should be held to be a mere bill for the removal of clouds upon the title, which could not be maintained at all but for section 6248 of the Code, because, as it also claims, it has possession of the property and the appellee was out of possession at the time the suit was instituted. For such possession it relies upon the fact that it placed a tenant upon the

property who enclosed a small part of it, and that it has thus occupied it for a few years; whereas, there is also testimony that the appellee also took possession in the same way. The appellee also claims that such possession of the appellant is merely as trustee for the true owner.

Asserting that it had possession in its own right and that the bill, if maintainable at all, is only maintainable under section 6248, which expressly authorizes such a suit, even though the complainant is out of possession, the appellant contends that it was entitled to a jury trial, as in an action of ejectment, which was denied. For this it appears to rely chiefly upon the case of *Duty* v. *Honaker Lumber Co.*, 131 Va. 35, 108 S. E. 863. That suit, however, has little resemblance to this, and it is expressly stated there and upon the authority of *Litz* v. *Howe*, 117 Va. 752, 86 S. E. 155, L. R. A. 1916-B, 799, that except when the relief which is authorized by Code 1919, section 6248, is sought, and in the absence of some peculiar equity, courts of equity are without jurisdiction to settle disputes regarding the title and boundaries of land. *Cumbee* v. *Ritter*, 123 Va. 451, 96 S. E. 747, refers to the same general doctrine. The exceptions are as well established as the rule. The question here is whether this case is not embraced within the latter exception. The obvious answer is that certainly it was never intended, either by section 6248 or by the cases which have construed it, to deny to a court of equity jurisdiction either to relieve against fraud or to declare and enforce trusts resulting therefrom.

Fairly stated, the gist of this bill is the fraud of William Hawkins and his faithlessness to his trust as attorney for Ivan Daxner, arising out of his contracts and conveyances for his own benefit, under which the

appellant claims, and to cancel and annul these conveyances. It is both a bill to declare a resulting trust based upon fraud, and to quiet the title. No mere emphasis as to which is primary and which is secondary can be allowed to defeat the jurisdiction of a court of equity, and the statute which relaxes the rule as to bills to quiet titles was never intended to deny or to destroy this jurisdiction. Even if there were an inadvertence or error in praying specifically for the removal of the alleged clouds, no such error in procedure which does not prejudice substantial rights and no mere fault of the pleading which does not hide the controlling issue can be allowed to obscure the decisive facts which in this case do so clearly appear, and so loudly call for swift condemnation and adequate relief.

[6, 7] Nor does it appear that the denial of a trial by jury is harmful in any aspect of the case to the appellant. This because as to the decisive facts there is no substantial conflict in the testimony. Some of the witnesses differ as to their recollection of dates and interviews, but the controlling facts of the case are established by the written contracts, letters, admissions and pleadings which are in the record, so that in no event, if submitted to a jury, could they have found any other verdict than one based upon the conclusion that William Hawkins, as attorney for Ivan Daxner, was false to his trust and sought to profit at the expense of his client in his attempt to acquire for himself and to convey the property which rightfully belonged to his client, that the appellant had notice thereof and is not an innocent purchaser for value. The outstanding facts cannot be obscured and are decisive of this case.

The widow of Hawkins, as his administratrix, was made a defendant. She filed her answer, being represented by counsel apparently independent, admitting

that her husband had never acquired any beneficial interest in the land here involved, and that any title which might appear to be in him by reason of any instruments of record was taken by him in his fiduciary capacity as counsel for Ivan Daxner, and held by him solely in trust for Daxner, and that Hawkins never paid any consideration for any of such conveyances. The administratrix of Hawkins claimed $7,000.00 of Daxner for disbursements, and there were written contracts showing that he was entitled to have such disbursements refunded to him. This amount was paid. Without these admissions, however, the facts thus admitted are shown to be true by many infallible proofs in the handwriting of Hawkins. His strange inconsistencies are so extraordinary as to suggest that he was mentally irresponsible for his conduct, but this in no wise aids the appellant in this litigation, for those who cooperated with him as agents for the appellant corporation had full notice of his fiduciary relations with his client Daxner, and cannot escape the consequences. The only valid defense which could possibly be interposed would be that the appellant corporation was an innocent purchaser for value without notice, but this defense, while asserted, is clearly disproved by the evidence.

[8, 9] One of the reasons urged by the learned counsel for the appellant against the decree complained of is, that the appellee did not come into court with clean hands; and this is apparently based upon the fact that during the pendency of the previous litigation the appellee and those under whom it claims paid off the liens against this property, and thus obtained the right to have that litigation dismissed. This they style a fraud upon the jurisdiction of the court. The learned trial

judge determines this question thus in his opinion, striking out a part of the answer in this case:

"A careful study has been made of these averments of the answer to discover the turpitude and fraud with which these transactions are tainted. It is not averred that any of these persons bore such relation to respondent or those under whom respondent claims as to make it wrong and fraudulent on their part to attempt in the usual way to get title to land. No charge is made that any of the grantors in the deeds procured had no power to convey, or owed any duty to the respondent not to do so, and that complainant or its associates knew this. The only single act of wickedness and wrong-doing pointed out relates to the forged power of attorney, and it is not even alleged that anybody except possibly Bukva knew anything about this. * * * The acts charged, with the exception of the forgery, are not fraudulent and wicked in themselves. It is not wrong to conceive the purpose of securing titles to land for one's own benefit; nor is it wicked to have such title conveyed to a corporation of one's own creation. It is not wrong to try to get such titles for the purpose of preventing another from obtaining them. If such acts are wrong and fraudulent, the facts must be pleaded showing why they are so. Such conduct when not wicked and fraudulent in itself, cannot be made so merely by using the terms 'fraudulently and collusively' in describing it, but facts must be stated showing why such conduct is wrongful and wicked."

We are fully in accord with the judgment of the trial court in this respect; and this disposes of the assignment that the court erred in striking out a large part of the answer. This action, for the reasons fully and elaborately stated in the opinion of the judge of the trial court, was proper, and the case of *Johnson* v.

*Mundy,* 123 Va. 748, *et seq.,* 97 S. E. 564, sustains this ruling.

We are told by the learned counsel for the appellant, in criticism of the decree of the trial court, that this is a new way to avoid the consequences of a bill to quiet title, whether filed by a complainant in possession, or by one out of possession under the statute. We do not think so. On the contrary, the relief sought and granted follows an old and well beaten path—that is, the equitable jurisdiction to establish fraud as well as to declare and enforce any trust resulting therefrom.

Many obvious propositions of law are stated, sustained and unmercifully belabored in the briefs; but with the main question determined, all the rest become immaterial and need no discussion. There are some disputed questions of fact, but further allusion to them would merely divert attention from those which are both apparent and conclusive.

[10-12] The only assignment of error which we think calls for any further special notice is the fifth.

J. T. McAllister was being cross-examined as a witness, and having admitted his interest in the litigation, refused to answer certain other questions relative thereto. Before the case was heard he did, however, file written answers to each of these additional questions which had been propounded to him, and this was accepted by the court as sufficient.

We think that as an abstract proposition criticism of this ruling is justified. The appellant had the right not only to show the interest and bias of the witness, but in order to determine the weight of his testimony, it had also the right to a full disclosure, and to cross-examine him within proper limits as to the details and extent of such interest. In this case, however, when those questions had been answered that limit had

doubtless been reached, and we decline to hold that ruling to be erroneous, because it is not probable that further cross-examination would have developed any additional facts, and because McAllister's testimony in this cause can be disregarded without affecting the inevitable result. That every act of William Hawkins as attorney for Ivan Daxner, every contract made and every conveyance received by him, as well as the alleged possession of the appellant under such deeds and contracts, inured to the benefit of the appellee, is manifest. It follows that whatever title or interest, if any, which the appellant acquired in consequence thereof, charged as it is with notice of Hawkins' agency and lack of good faith, is held by it as trustee for the benefit of the appellee. All of this being true, it is unnecessary to support these obvious conclusions by citations of authority, because they rest upon equitable doctrines which cannot be denied.

The decree is plainly right.

*Affirmed.*