### Staunton

· ELY & OTHERS v. JOHNSON & OTHERS.

September 9, 1912.

Absent, Cardwell, J.

1. EQUITY—*Complete Relief—Injoining Trespass—Cloud on Title.*—
   Where the primary object of a suit is to injoin a trespass, in-
   volving irreparable injury to the very substance of land, and a
   court of equity acquires jurisdiction on this ground, it may go
   on and grant the incidental relief prayed of quieting the title
   and removing the clouds therefrom, on the principle that where
   a court of equity acquires jurisdiction on equitable grounds it
   will go on and grant complete relief.

2. INJUNCTION TO RESTRAIN TRESPASS—*Complainant's Title.*—A plain-
   tiff in a suit to restrain a trespass need not allege that his
   title is undisputed or has been adjudicated. He must, however,
   show a *prima facie* title. If he relies upon a paper title, he
   should generally exhibit his title papers, or such of them at
   least as will make out a *prima facie* case of title. If he relies
   upon possession, he should state the facts upon which he bases
   his claim of possession, so that in either case the court can see
   from the title papers filed or the facts stated that he has a
   *prima facie* title.

3. INJUNCTIONS—*Trespass—Irreparable Injury—Inadequate Remedy
   at Law.*—In a suit to restrain a trespass upon land by cutting
   the timber thereon, the complainant must allege in his bill such
   facts as will show that the injury threatened is irreparable, or
   that the remedy at law is inadequate; that the timber on the
   land constitutes its chief value, or that it is essential to the
   enjoyment of the land, or how its removal would injure the
   inheritance. ·

4. VENDOR AND PURCHASER—*Purchaser With Notice.*—If, before a party
   becomes a complete purchaser of land, he is put upon inquiry
   as to the title of another who is in actual possession of a part
   of the land, and has for years been openly exercising acts of
   ownership thereon, and, furthermore, has actual knowledge of
   such transactions, and has recognized and acquiesced in the
   dividing line claimed by such other. such purchaser is not a
   purchaser without notice. ·

Appeal from a decree of the Circuit Court of Lee county. Decree for the complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*J. C. Noel* and *B. H. Sewell,* for the appellants.

*Pennington Bros.* and *Duncan & Cridlin,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The property involved in this litigation is 20.9 acres of forest land situated in Poor valley, in Lee county, Va., and comprises the northern portion of a tract of seventy-eight acres, patented to Moses McAfee (the common source of title of the plaintiffs and defendants) June 30, 1849.

Considering the original and amended bills of the appellees as a whole, they show a *prima facie* title to the land in question, and, among others, contain the allegations "that a few months ago the said Marion T. Ely (one of the defendants) and his father, Robert B. Ely, have gone upon said tract of land    *    *    *    and have cut, and are now cutting, considerable timber and trees, tan bark and other material, and removing the same from said land, claiming the said land as their own, and refusing to acknowledge the title of your orators in said property. Your orators allege that the said injuries are irreparable, that the said tract of land is mainly valuable for the timber that is growing thereon, and that the destruction of the said timber is equal to the destruction of the entire property, and they cannot be adequately compensated in damages for said injuries."

These allegations are followed by a prayer that the de-

fendants be injoined from trespassing upon the land, and from cutting and removing the timber and other materials therefrom.   The bills also contain incidental prayers that the plaintiffs may be quieted in their title and that the clouds may be removed therefrom.   But the primary object of the suit is to injoin trespasses involving irreparable injury to the very substance of the land itself.   The quieting of the title and removal of clouds are incidental merely to the controlling ground for equitable jurisdiction and relief.   If these subsidiary matters had been made the burden of the complaint, as the law was when this suit was brought, it would have been indispensable to allege and prove that the plaintiffs held both the legal title and possession of the land.    (But see Acts of Assembly 1912, p. 76.)

Upon familiar principles, where a court of equity acquires jurisdiction of a case on equitable grounds, it will proceed to grant complete relief, even though such redress may include the establishment of purely legal rights and the enforcement of legal remedies otherwise beyond its scope.   This doctrine has been uniformly recognized by the decisions of this court.

Upon the main question it was held, in *Bledsoe* v. *Robinett,* 105 Va. 723, 54 S. E. 861, that a plaintiff in a suit to restrain a trespass need not allege that his title is undisputed or has been adjudicated.   He must, however, show a *prima facie* title.   "When he claims, under a paper title, he should generally exhibit his title papers   *   *   *   or such of them at least as will make out a *prima facie* case of title; if he relies on possession, he should state the facts upon which he bases his claim of possession, so that in either case the court can see from the title papers filed, or the facts stated, that he has a *prima facie* title."

He must also allege such facts "as will show that the injury is irreparable, or that the remedy at law is inade-

quate. That the timber on the land constitutes its chief value, or that it is esential to the enjoyment of the land, or how its removal would injure the inheritance." *Collins* v. *Sutton,* 94 Va. 127, 26 S. E. 415; *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337; *Callaway* v. *Webster,* 98 Va. 790, 37 S. E. 276; *Woolfolk* v. *Graves,* 113 Va. 182, 69 S. E. 1039, 73 S. E. 721.

Measured by the principles announced by these authorities, the bills set out a case for equitable jurisdiction and relief, and the demurrers were properly overruled.

Upon the issues of fact submitted by the pleadings, the case may be thus summarized: In the year 1854 negotiations for the sale of the property were commenced by a letter from McAfee to Johnson Gibson, which culminated November 18, 1854, in a deed conveying the same to the three Gibsons, from whom the plaintiffs derive their title. The original deed was found among the papers of Johnson Gibson in September, 1908, after his death, and on September 17, 1908, was admitted to record. The deed characterizes the transaction as a "swap or exchange," but the letter plainly shows that it was in legal effect an ordinary deed of bargain and sale. McAfee owed Johnson Gibson $45, and the discharge of that indebtedness was the consideration for the deed.

The defendants claim title to the land *mediately* through the daughters of Moses McAfee, to whom, by deed of gift dated June 17, 1860, he conveys "all of my lands that I own in Lee county, lying on both sides of the main road, adjoining the lands of Thompson, Ely, Eates and Edds, it being the same lands that China McAfee and William McAfee now lives on. No. of acres not known." On March 24, 1877, the grantees in the foregoing deed and China McAfee, widow of Moses McAfee, undertook, as the defendants assert, to include the 20.9 acres of land in a deed to Robert B. Ely. If it be conceded that the general de-

scriptions contained in the last-named deed are sufficient to embrace the land in dispute, nevertheless, the plaintiffs admittedly have the older title. The controversy, therefore, in its essence, narrows itself down to the single proposition, whether or not Robert B. Ely was an innocent purchaser for value and without notice of the prior title of the plaintiffs?

The defendants, M. M. Ely and Marion T. Ely, the wife and son of the grantor, Robert B. Ely, are not purchasers for value, but are volunteers and, therefore, must rely upon his title to maintain their contention.

We shall not attempt to rehearse the voluminous evidence or to reconcile the discrepancies in the testimony of witnesses. It is sufficient to give our conclusions.

The evidence sustains the allegation that the timber on the land constitutes its principal value, and that the defendants had cut and removed a considerable quantity of timber, tan bark and other materials from the land during the year 1908. The fact that they were not actually engaged in cutting timber at the time suit was instituted loses its significance in view of the attitude of the defendants with respect to the litigation. There is no avowal on their part of a purpose to desist from further depredation, and their entire defense rests upon a denial of the plaintiffs' rights, and the claim of absolute ownership of the property on their part, with the consequent right to use it as they please.

The evidence also shows that before Robert B. Ely became a complete purchaser of the land (if he ever became such purchaser), the circumstances were sufficient to put him on inquiry as to the Gibson title, as the law then was (1874), under the doctrine of *Chapman* v. *Chapman,* 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846. The rule laid down in that case continued to be the law until it was changed by a proviso added to the Code, sec. 2465, by Acts 1895-'96, p. 842. By Acts 1897-'98, p. 833, the proviso was

omitted; but it was again restored by Acts 1899-1900, p. 89.  See notes to Va. Code, 1904, sec. 2465.

The Gibsons had long been in actual possession of part of the land, and had cleared and cultivated it and erected a cabin thereon, which remained in the occupancy of their tenants until it was finally pulled down and rebuilt on a different site.  They also made a fence from the black oak corner, along the dividing line between the 20.9-acre tract and the southern end of the 78-acre survey, for part of the distance (but not extending all the way), in the direction of the corner marked by two white oaks, a dogwood and a sourwood.  This fence was partially destroyed by forest fires, but the remains of it, marking the old fence line, were visible for several years after the close of the Civil War.  In addition to these *indicia* of ownership, the Gibsons for years exercised the right of cutting, using and selling locust posts, board trees, barn logs and other timber from the land.  They also pointed out to purchasers of timber from them the dividing line from the black oak to the corner at the two white oaks, the dogwood and the sourwood.

But the evidence, moreover, shows actual knowledge on the part of Robert B. Ely of these transactions, and his recognition of and acquiescence in the dividing line as claimed by the Gibsons.  He showed this line to purchasers of timber on the 20.9-acre tract of land from the Gibsons, and also to purchasers of timber on the land south of the dividing line from himself; and in each instance notified the parties that they must confine their cutting to their respective boundaries.  It was, furthermore, shown that the defendant, Marion T. Ely, had given similar instructions to purchasers of timber on the land south of the dividing line from him.

Upon these considerations, we are of opinion to affirm the decree of the circuit court.

*Affirmed.*