# Richmond

EARSEL EDWARDS, ET ALS. V. W. M. RITTER LUMBER COMPANY, ET ÄLS.

January 17, 1935.

Present, Campbell, C. J., and Holt, Epes, Browning and Chinn, JJ.

The opinion states the case.

*G. Mark French* and *S. H. & Geo. C. Sutherland,* for the appellants.

*Earl P. Rose, Walter Lee Rush* and *A. A. Skeen,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The Clinchfield Coal Corporation, a Virginia corporation, and W. M. Ritter Lumber Company, a West Virginia corporation doing business in Virginia, filed their bill against Earsel Edwards, Elvina Colley, Iowa Edwards, B. H. Edwards, Fitzhugh Colley, Zena M. Colley, Estelle Willis, Earnest Willis, Chloe Ratliff, Troy Ratliff and Richard Edwards, alleging that Clinchfield Coal Company, complainant, is seized and possessed, by proper and apt deeds, muniments, and grants of title of record, of two certain tracts of land situated in Dickenson county and generally described as follows: (1) That certain tract or parcel of land known as the Clinchfield Coal Corporation-Columbus Phipps 105-26 acre tract; (2) that certain tract known as the Clinchfield Coal Corporation-H. H. Branham 170 acre tract; that by proper deed the Clinchfield Coal Corporation conveyed to the W. M. Ritter Lumber Company the timber standing on said two tracts of land, together with the privilege of removing same within twenty-five years from the date of deed; that the Ritter Company began the construction of a road upon the Columbus Phipps tract of land preparatory to the construction of a tram road in order to remove the timber from the lands purchased from the Clinchfield Coal Corporation; that on the .... day of .........., 1933, the defendants entered upon the Phipps tract of land and with force and arms prevented further construction of the road; that defendants have been guilty of repeated acts of trespass upon both the Phipps and Branham tracts of land by cutting and removing timber trees from the land; that the defendants are financially unable to respond in damages; that the Ritter Lumber Company would suffer irreparable injury; and there was a prayer for an injunction.

The defendants filed a demurrer and answer to the bill. The demurrer challenged the jurisdiction of a court of equity, on the ground that complainants had an adequate remedy at law. The demurrer was properly overruled. Upon its face the bill denotes a *prima facie* title in complainants, the destruction of the timber, the insolvency of defendants, and under the ruling of this court in *Cumbee* v.

*Ritter,* 123 Va. 448, 96 S. E. 747, which reaffirms the doctrine of *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337, a court of equity has jurisdiction in cases of this nature.

The answer denied the allegation of the bill as to the ownership of the land in controversy and claimed ownership in the defendants by reason of their adverse possession of the property.

Over seven hundred pages of evidence were taken to substantiate the conflicting claims. Upon a final hearing, a decree awarding a permanent injunction against Earsel Edwards was entered. It is from that decree this appeal is allowed.

In support of its claim that it is the fee simple owner of the lands by reason of its paper title thereto, the Clinchfield Coal Corporation introduced forty-three deeds. In view of the following stipulation of counsel only seven of these deeds become material: "It is admitted by counsel for defendants for the purpose of saving time and expense that the complainants have good paper chain of title to all the land in dispute back to Dale Carter and that they also have a good paper chain of title back to Columbus Phipps to the tract of land designated on plaintiff's map as Columbus Phipps 105 acre tract and back to H. H. Branham for the tract designated on complainants' map as H. H. Branham tract of 171 acres. That no admission is made as to title prior to these links."

In this case, as in other cases where one claims possession by reason of the fee simple ownership of land, it is incumbent upon the claimant to trace his title back to the Commonwealth or to a common grantor. Complainants attempted to do this by introducing in evidence a grant from the Commonwealth to Richard Smith, and successive deeds, until title was vested in Dale Carter, who in turn made a conveyance to the complainant.

In addition to the burden of tracing title to the land in controversy, it was incumbent upon complainants to show that the land in dispute is covered by the title papers. The main contention of the defendants is that complainants have

wholly failed to adduce proof identifying the lands in issue. In other words, complainants have failed to show that the lands in dispute are covered by their title papers. In the written opinion of the chancellor, filed with the record, this is said: "The evidence of identity by the complainants, is in some respects, *not altogether satisfactory*, but taken in connection with the admission of defendants, *is thought to be sufficient.*" (Italics added.)

At the conclusion of the argument of this case before this court, counsel for complainants were requested to file an additional brief "putting their finger" on the evidence in the voluminous record showing that the identity of the land had been sufficiently shown. Pursuant to that request counsel filed a brief in which we read:

"Do the Richard Smith grants cover the lands in controversy?

"Counsel for appellee submit that this question is answered in the affirmative by the following proof:

"These grants are found on pages 327 and 328 of the record. Without extrinsic evidence of course the court would be powerless to conclude that these grants embrace the land in controversy, but looking to the testimony of W. D. Tyler, a civil engineer, we find his positive and unequivocal statement that grants Nos. 1 and 2 from the Commonwealth to Richard Smith do embrace the land in controversy. * * * W. E. French, another civil engineer, in speaking of these grants and conveyances, testified that they cover the land in controversy, and * * * this witness testifies after examining all these muniments of title including the Smith grants that in his *opinion*, these grants and deeds cover the lands in controversy."

It is thus to be observed that the chancellor is basing his conclusion as to the sufficiency of the identification upon certain admissions of the defendants in their answer, while counsel rest their claim of identity upon the evidence of Tyler and French.

We are unable to concur in the conclusion of the chancellor that defendants have admitted the identity of the land.

As we construe the answer, it is only an admission that the land in controversy lies within either the Smith or Thompson grants, and the fact that no evidence was introduced as to what lands were embraced in the Thompson grants is material.

We are also unable to concur in the view of counsel that the evidence of Tyler and French concludes the question of the identity of the land in controversy. The record discloses that Mr. Tyler, who is a civil engineer, has been in the employ of the Clinchfield Coal Corporation as head of the real estate department, and as vice-president, since 1906. While it is true that Mr. Tyler testified that the grants introduced covered the lands in controversy, that statement must be considered in connection with all of his testimony. When so considered it is clear that the witness was merely giving his opinion and not making a statement of fact. He admitted that he had never run any of the lines; that he only knew the location of the corners of the land from his examination of the field books and notes made by an assistant, together with an examination of a map prepared in his office showing the location of the land.

In regard to the evidence of Mr. French, who was also a civil engineer, it is only necessary to advert to the quoted statement of counsel, where it is said: "This witness testifies after examining all these muniments of title, including the Smith grants, that in his *opinion* these grants cover the lands in controversy." (Italics added.)

It is thus apparent that in its last analysis the right of complainants to relief by injunction is based upon the identification of the controverted land by the opinion of expert witnesses. In Virginia this cannot be done.

In *Sutherland* v. *Gent,* 116 Va. 788, 82 S. E. 713, 714, Judge Whittle quotes with approval the rule laid down by Riely, J., in *Holleran* v. *Meisel,* 91 Va. 144, 21 S. E. 658, that: "'In an action of ejectment, the question whether the land in controversy is within the boundaries claimed by the plaintiff's declaration is a question of fact upon which witnesses may state their knowledge, but upon which ex-

perts may not express opinions. On such questions expert testimony is not admissible.' "

That doctrine is also applicable where a complainant seeks equitable relief by way of injunction to restrain a trespass upon land.

Our conclusion is that complainants have failed to show that the lands in controversy are covered by the grants and other instruments in writing introduced in evidence, and therefore, for that reason it was error for the chancellor to decree a permanent injunction in this case. However, in view of the fact that the record does not disclose that a survey of the land in dispute has ever been had, and in view of the further fact that complainants based their identification of the land upon the mistaken view that the evidence of Tyler and French was conclusive of the question, we do not think there should be an adjudication of the question of title in this suit. Therefore, the decree will be reversed and annulled, without prejudice to the rights of any of the parties interested to assert title to the property if they be so advised.

The only other assignment of error we deem it necessary to discuss is: "The court erred in making the brief of the complainants and its opinions a part of the record."

No error was committed by the court in making its opinion a part of the record. This court for a long period of years has encouraged the trial courts to file with the record a written opinion, and in numerous cases has adopted the trial court's opinion as the conclusion of this court.

The objection to making the briefs filed in the lower court a part of the record is well founded. Usually such briefs are not prepared with that degree of care and thoroughness which is generally given to briefs filed in this court. They are rarely, if ever, relied upon in the appellate court, as invariably additional briefs are filed. The only possible result which attends their being made a part of the record is to encumber the record and multiply the costs of litigation, which is always to be deplored.

Within the past year this court, realizing the great bur-

den which litigants have been forced to carry, due in large measure to the taxation of printing and clerical costs, has secured legislation placing the clerks of the appellate court on a salary basis and reducing the cost of printing records to the extent that litigants are now paying approximately thirty per centum less for such services than under the old order.

A decree will be entered in this court dismissing the bill of complaint and awarding costs to the appellants.

*Reversed.*