# Richmond

CHARLES C. PATTERSON v. LILLIE M. SAUNDERS AND OTHERS.

January 26, 1953.

Record No. 4002.

Present, All the Justices.

The opinion states the case.

*Harold H. Dervishian, Joseph F. Spinella,* for plaintiff in error.

*E. Sclater Montague, Charles S. Smith, Jr., George M. Brady,* for defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

Charles C. Patterson filed his motion for judgment against Lillie M. Saunders, J. B. Gray, O. M. King, and Canton Lumber Company, Inc., seeking to recover $50,000 damages for wrongfully cutting and removing timber from a sixty-acre tract of land, situated in Elizabeth City county, alleged to be owned by him. Defendants filed separate pleas of *res judicata,* in which it was alleged that the Circuit Court of Elizabeth City county, in a chancery suit brought by the same plaintiff against J. B. Gray and O. M. King, two of the defendants named in his motion for judgment, had held that plaintiff had no title to the same sixty acres of land described in his motion. The trial court sustained the pleas and dismissed the case. To that judgment this writ of error was granted.

The record of the former proceeding upon which each of the pleas of *res judicata* is based, consists of a bill in chancery, an answer and a decree. It was alleged in the bill of complaint filed by the same plaintiff on October 22, 1946, that he was the

owner in fee of the sixty acres described in his motion for judgment, and cited the deed by which he acquired the property and other deeds in his chain of title, and charged that J. B. Gray and O. M. King "have cut and are cutting 800,000 feet of heavy timber more or less on that portion of my land in the Wythe District of Elizabeth City county containing 60 acres * * *." The plaintiff's prayer in the bill was that J. B. Gray and O. M. King be enjoined "from cutting timber and trees on my above said land * * * and * * * from trespassing on my said land in any manner whatsoever."

The defendants in that proceeding filed a short answer denying each and every allegation set forth in the bill. The cause came on to be heard upon the issues thus joined, and after considering the evidence introduced by the parties, the chancellor entered the following decree:

"This day came the complainant pursuant to notice and filed his bill of complaint for a temporary injunction against the defendants, and this day came the defendants and filed their answer in writing, and the Court having heard the evidence, being of the opinion that the complainant has failed to establish his ownership of the property, and having failed to prove that either of the defendants have cut any timber from the complainant's land, and being of the opinion that the complainant is not entitled to any of the relief prayed for, doth adjudge, order and decree that the complainant's petition for a temporary injunction be and the same is hereby denied and this cause is dismissed and stricken from the docket of this Court at the cost of the complainant; to which ruling of the Court the complainant excepted.

"And the Court proceeding further doth authorize each of the parties to this proceeding to withdraw from the evidence the respective exhibits filed in evidence this day in this proceeding.

"An emergency existing, this decree shall be effective forthwith."

Charles C. Patterson, hereinafter designated "plaintiff," contends that the judgment of the trial court sustaining the pleas of *res judicata* is erroneous for three reasons: (1) the court of equity in the former proceeding had no jurisdiction to try title to plaintiff's land; (2) even if it had jurisdiction, it did not pass upon the merits of the cause, and (3) there was no privity of parties in the two proceedings.

■ Originally, an action of ejectment was the exclusive remedy to try title and settle controverted boundaries of land, but this rule has been modified by statutes (Code of 1950, secs. 8-836 and 55-153) and modern decisions.

The general rule is that in the absence of some peculiar equity arising out of the conduct, situation or relation of the parties, a court of equity is without jurisdiction to settle disputes as to title and boundaries of land. But where the act done, or threatened to be done, would be destructive of the substance of the estate, or would result in irreparable injury, a court of equity will assume jurisdiction, restrain the perpetration of the wrong and prevent the injury. Equity having taken jurisdiction, it will then decide the whole controversy, though the issues are legal in their nature and are capable of being tried by a court of law. *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337; *Cumbee* v. *Ritter,* 123 Va. 448, 96 S. E. 747; *Edwards* v. *Ritter Lumber Co.,* 163 Va. 851, 177 S. E. 841.

■ The bill of complaint filed by this plaintiff in the former proceeding does not appear to have been drawn by an expert. However, its allegations were amply sufficient to invoke equity jurisdiction. The bill contains the essential averments approved by this Court in *Bledsoe* v. *Robinett,* 105 Va. 723, 54 S. E. 861, where Judge Buchanan, discussing the necessary allegations of a bill in this class of cases, said: ''The pleadings of the complainant ought, therefore, to make out a clear case for the equitable relief sought, for courts of law ought not to be ousted of their jurisdiction in doubtful cases, especially where the title to or the boundaries of land is involved, as is the fact in this case.

\* \* \* \* \* \*

''It is not sufficient for the complainant to allege that he is the owner of the land upon which the trespass is being committed, but he must set forth his title. Where he claims under a paper title he should generally exhibit his title papers, or copies thereof, or such of them at least as will make out a *prima facie* case of title.''

Judge Whittle, in *Ely* v. *Johnson,* 114 Va. 31, 75 S. E. 748, citing with approval the case of *Bledsoe* v. *Robinett, supra,* said: ''\* \* \* a plaintiff in a suit to restrain a trespass need not allege that his title is undisputed or has been adjudicated. He must, however, show a *prima facie* title.''

Plaintiff's bill was demurrer proof. It contained the essential averment that plaintiff owned the land, and referred to the deeds

by which he claims to have acquired title. The answer denied this allegation. Each side was given full opportunity to introduce, and did introduce, evidence on this issue of fact. The court did more than merely deny the injunction. It disposed of the controversy on its merits and dismissed the case at the cost of [3] plaintiff. In the order of dismissal the court said: "Complainant has failed to establish his ownership of the property * * * and failed to prove that either of defendants have cut any timber from complainant's land."

The doctrine of *res judicata* is that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter as between the parties or their privies, in any subsequent suit, in the same court or any other court, at law or in chancery. *Hedlund* v. *Miner*, 395 Ill. 217, 170 A.L.R. 1306, 69 N. E. 2d, 862.

"A judgment in a case involving two or more issues is treated as conclusive upon all of them, where all are decided in favor of the same litigant and the judgment rests upon them jointly, since the decision of one issue in such case is no less necessary or material than the decision of the other." 30 Am. Jur., Judgments, sec. 185, p. 931.

"The general rule is that a judgment, in a former action, based upon an insufficiency of evidence is sufficient to support the application of the doctrine of *res judicata*." 30 Am. Jur., Judgments, sec. 213, p. 948.

The plaintiff, in the chancery cause, excepted to the entry of the decree, but took no appeal therefrom. Whether the decree was or was not supported by the evidence is immaterial. A final decree, whether right or wrong, from which no appeal is taken, is binding upon the litigants. *Nicholas* v. *Commonwealth*, 186 Va. 315, 42 S. E. 2d, 306.

In *Cumbee* v. *Ritter*, 123 Va. 448, 96 S. E. 747, Judge Prentis, speaking for the court, said: "In a case like this, where both parties claim title and possession and both are exercising acts of ownership, and one fails to establish even a *prima facie* case, we are of opinion that in the interest of peace, law and order the equity court should take jurisdiction; and that in this case the trial court properly determined the question raised against the defendant's contention, which rests upon a claim of title, which is entirely unsustained, if not negatived, by the evidence introduced to support it. In view, however, of the fact that the record

suggests the possibility that the defendants were overconfident in their view that the court of equity had no jurisdiction, and, therefore failed fully to present the evidence upon which they relied in support of their claim of title, we are not disposed to close the door of opportunity to them.'' The decree was affirmed without prejudice to the right of defendant thereafter to assert title to the property in a proper forum.

In the case at bar the equity suit was not dismissed without prejudice. The adjudication was positive. If the plaintiff had proved that he owned the land, doubtless the court would have performed its duty, issued the injunction and restrained the defendants from cutting and removing the timber, or, if he had proved that he had a *bona fide* claim of right to the land, it would have been the duty of the court to dismiss the case without prejudice to plaintiff's rights. *W. O. & W. R. R. Co.* v. *Cazenove,* 83 Va. 744, 3 S. E. 433; *Moorman* v. *Lynchburg,* 113 Va. 90, 73 S. E. 987; *Woolfolk* v. *Graves,* 113 Va. 182, 69 S. E. 1039.

■ While the court did not declare that title to the land was in the defendants, or their privies, it did declare that plaintiff was not the owner. That alleged fact was the main issue in the cause. A fact necessarily involved in an issue, on which there has been a judgment, is thereby conclusively settled in any suit thereafter between the same parties and their privies. *Beckwith* v. *Thompson,* 18 W. Va. 103; *Foster* v. *City of Manchester,* 89 Va. 92, 15 S. E. 497; *Sawyer* v. *City of Norfolk,* 136 Va. 66, 116 S. E. 245; *Sussman* v. *Sussman,* 158 Va. 382, 163 S. E. 69.

Plaintiff does not allege in his motion for judgment, nor does he contend, that he has acquired any additional right, title or interest in the land since the entry of the final decree against him.

■ ''The doctrine of res adjudicata * * * is a rule of law founded on the soundest consideration of public policy. The doctrine is founded upon two maxims of the law, one of which is that 'a man should not be twice vexed for the came cause;' the other that 'it is for the public good that there be an end of litigation.' '' 8 Mich. Jur., Former Adjudication or Res Adjudicata, § 3, p. 577; *Patterson* v. *Anderson* (January 26, 1953), 194 Va. 557, 74 S. E. 2d 195.

The plaintiff and two of the defendants (Gray and King) named in the present action were plaintiff and defendants, respectively, in the chancery cause, which involved the same sub-

ject-matter—the ownership of timber on the same 60 acres of land.

This brings us to the question: What parties are bound by the decree in the former litigation?

It is stated in the motion for the judgment that Lillie M. Saunders sold the timber on the sixty-acre tract to J. B. Gray and O. M. King, and that they and the Canton Lumber Company cut and removed it therefrom.

It is generally held that " 'privity' means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and the term 'privy,' when applied to a judgment or decree refers to one whose interest has been legally represented at the trial." 50 C. J. S., Judgments, sec. 788, p. 324.

While Lillie M. Saunders was not named a party defendant in the chancery cause, the decree presented to, and entered by the chancellor, in that case was endorsed:

"We Ask for This:

"/s/ Chas. S. Smith, Jr. Pd

"/s/ E. Sclater Montague, atty for
    Lillie M. Saunders."

It is stated in the brief that Lillie M. Saunders appeared in the chancery cause both in person and by E. Sclater Montague, her attorney, and was a witness for herself, and that her attorney took an active part in the defense. Under those circumstances, she is bound by the decree and is entitled to any benefit resulting therefrom.

In *Wright* v. *Wright,* 164 Va. 245, 178 S. E. 884; we quoted with approval, the following from *Souffront* v. *La Compagnie des Sucreries,* 217 U. S. 475, 30 S. Ct. 608, 612, 54 L. Ed. 846:

"The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record." To the same effect see 30 Am. Jur., Judgments, sec. 227, p. 960; *E. I. Du Pont de Nemours & Co.* v. *Richmond Guano Co.* (Va.) 297 F. 580.

██ The facts in *Pickeral* v. *Federal Land Bank*, 177 Va. 743, 15 S. E. 2d 82, were that Pickeral instituted an action of trespass upon a certain tract of land against James and Esther Waller. The Wallers were in possession under a contract of sale from the Federal Land Bank, but the latter was not made a party to the action. Judgment was rendered for defendants. Thereafter, Pickeral instituted an action, by petition, under section 5490 of the Code of 1919 (now section 8-836 of the 1950 Code) to settle the boundary lines between the adjacent owners —Pickeral and Federal Land Bank. The Bank filed a plea of *res judicata*, based upon the former action of trespass. It was held that the Bank was entitled to rely upon the plea, although it was not a party to the action for trespass. Speaking to the point, it was said: "The Wallers were parties defendant in the first trial. The latter held the land under a contract of sale with the Federal Land Bank, therefore, the bank was a party inferentially and by representation. Its interest in the outcome and that of the Wallers were identical."

Mr. Justice Eggleston, speaking for the court in *Ward* v. *Charlton*, 177 Va. 101, 12 S. E. 2d 791, said: "The doctrine of *res judicata* or estoppel by judgment is based on public policy. 2 Freeman on Judgments, 5th Ed., § 626, p. 1318; 30 Am. Jur., Judgments, § 165, pp. 910, 911. It 'proceeds upon the principle that one person shall not the second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue, which has been necessarily tried and finally determined, upon the merits, by a court of competent jurisdiction, in a judgment *in personam* in a former suit.' *United States* v. *California Bridge & Construction Co.*, 245 U. S. 337, 341, 38 S. Ct. 91, 93, 62 L. Ed. 332.

"The doctrine is firmly established in our jurisprudence and should be maintained where applicable."

The legal rights of the defendants in the motion for judgment are so identified in interest that each has the right to invoke the proceedings in the chancery cause in bar of this action. 30 Am. Jur., Judgments, sec. 225, p. 957.

The judgment of the trial court is affirmed.

*Affirmed.*

Buchanan, Miller and Whittle, JJ., dissenting.

Buchanan, J., dissenting.

The opinion of the court in this case, as I believe, extends the doctrine of *res judicata* farther than has been done before and farther than should be done now. According to the opinion the unsuccessful effort of Patterson at a former time to obtain a temporary injunction to keep Gray and King from cutting timber on land claimed by Patterson, and which Patterson sought to have surveyed, has resulted in his losing all title he then had or may thereafter have acquired and in establishing that title in a person who was not even a party to that suit. This, it is said, is brought about by the record in the injunction suit, consisting of a bill in chancery, an answer and a decree.

The bill, which was field by Patterson on October 22, 1946, contained these, and only these, allegations:

That Gray and King "have cut and are cutting 800,000 feet of heavy timber more or less on that portion of my land in the Wythe District of Elizabeth City County containing 60 acres and bounded as follows:

"On the North by the main road, on the East by Renick and *Wilford,* on the South by the heirs of Francis and on the West by the Warwick County line and that portion of the land lying in the Newport District of Warwick County, Virginia."

That Gray and King "have cut and are cutting all the logs in the Virginia Electric and Power Co. Right-of-Way, which I was saving as evidence in the condemnation case now pending before the Supreme Court of Appeals of Virginia."

That "All of the above lands together with a small jib of land on the North side of main County Road" is known as the Rose Cottage Farm, referred to in a deed for 200 acres more or less from Thornton F. Jones to Joseph C. Hart and Lucy Page Hart, and being the same land that was conveyed to Patterson by John Weymouth, Trustee in Bankruptcy of the estate of Louis Heffelfinger, dated June 1, 1935, and recorded in Elizabeth City and Warwick Counties.

The bill concludes with a petition to the court for an injunction to restrain Gray and King and their employees "from cutting timber and trees on my above said land, situated in the Wythe District of Elizabeth City County, Virginia and also to restrain you from trespassing on my said land in any manner whatsoever;" and a further petition that the county surveyor make a complete survey "of all the said land."

On the day the bill was filed, October 22, 1946, Gray and King filed their answer in these words: "Your respondents, J. B. Gray and O. M. King, for answer to a bill of complaint filed against them by Charles C. Patterson, deny each and every allegation contained in the Bill of Complaint."

On the same day, October 22, 1946, the court entered the decree quoted in the opinion. A reading of that decree discloses that the court "having heard the evidence" (with nothing in the record to show what evidence was heard) was of opinion:

(1) That the complainant, Patterson, had failed to establish his ownership of the property;

(2) That he had failed to prove that either of the defendants had cut any timber from the complainant's land; and

(3) That the complainant was not entitled to any of the relief prayed for.

The adjudication, and the only adjudication, was "that the complainant's petition for a temporary injunction be and the same is hereby denied and this cause is dismissed and stricken from the docket of this Court at the cost of the complainant, * * *."

That is all there is on which to base the present ruling that Patterson is now barred from maintaining his present motion for judgment against Lillie M. Saunders, Gray, King and Canton Lumber Company, Inc. That motion for judgment, as amended, charges that during the months of October and November, 1946, and prior thereto, Patterson owned and still does own a tract of land in Elizabeth City county containing 60 acres more or less, bounded "on the north by the main road, on the east by Renick and *Wilford*, on the south by the heirs of Francis and on the west by the Warwick County Line;" and which was at that time posted and fenced by Patterson; that Lillie M. Saunders wthout any right, title or interest in said property, had sold the timber thereon to Gray, King and Canton Lumber Company, Inc., and had wrongfully persuaded and allowed them to cut and remove one million feet of timber from said tract of land "belonging to the undersigned" and had received large amounts of money therefrom, which wrongful acts were committed during the months of September, October and November, 1946, and thereafter.

The pleas of *res judicata* which were sustained by the trial court and now sustained by this court say, as they must

say in order effectively to allege an estoppel, ''that the subject matter of all things alleged in said notice of motion for judgment have *(sic)* heretofore been finally adjudicated'' and a final decree heretofore rendered ''concerning the merits of this controversy, to-wit: the ownership of said real estate.''

But what did the decree adjudicate as to the ownership? Not that the ownership was in the present defendants, Lille M. Saunders or Canton Lumber Company, Inc. There was no adjudication of any right in either of them. They were not even made parties to the suit.

Neither did the decree adjudicate the ownership to be in Gray or King. They set up no claim to the land. Their answer merely denied generally the allegations of the bill.

Nor yet did the decree adjudicate that Patterson had no title. The decree recited that he had ''failed to establish his ownership'' and ''failed to prove that either of the defendants have cut any timber from the complainant's land.'' The failure of the complainant that resulted in the denial of his requested relief was a failure to introduce evidence sufficient to support his allegations. There were only two things alleged— one that he owned the land, the other that Gray and King were cutting his timber. There is nothing to show what evidence he introduced or why the court held it insufficient. He had not asked the court to adjudicate that he had the true title against all other persons. He merely asked for a temporary injunction to restrain trespassers. Had the relief he asked been granted, it would not have established his title against the defendants in the present motion for judgment. Certainly the denial of the relief he sought did not establish title in any of these defendants, none of whom submitted any claim of title for adjudication in the chancery suit. If the present defendants would not have been barred in the present suit by the granting of an injunction in the chancery suit, then the plaintiff in the present action ought not to be barred by his failure to obtain an injunction in the chancery suit.

The question of the ownership of the title was not put in issue by any pleading in the chancery suit; both the necessity and the propriety of there deciding that issue were absent, and no such issue was there decided, as the decree itself shows.

''The general rule is that a judgment is not conclusive in regard to a question which, from the nature of the case, may

not be adjudicated in the action in which it is rendered. On the ground that a judgment rendered by a court on matters outside the issue submitted for its determination stands upon the same footing as one dealing with a subject matter entirely foreign to its jurisdiction, it has been held that the doctrine of res judicata operates only as to questions within the issues as they were made or tendered by the pleadings, and does not extend to matters which might have been litigated under issues formed by additional pleadings." 30 Am. Jur., Judgments, sec. 182, pp. 927-28.

" '* * * In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' " *Kemp* v. *Miller*, 166 Va. 661, 675, 186 S. E. 99, 104.

" '* * * If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other." 30 Am. Jur., Judgments, sec. 174, p. 918.

On the pleadings in the chancery suit it is at least extremely doubtful that the court had jurisdiction to settle a dispute as to the title and boundaries of the land claimed by the complainant in that suit. This because of the general rule stated in *Cumbee* v. *Ritter*, 123 Va. 448, 451, 96 S. E. 747, 748, "that in the absence of some peculiar equity arising out of the conduct, situation or relation of the parties, courts of equity are without jurisdiction to settle disputes as to title and boundaries of land."

But concerning that if Gray and King had asserted an adverse title in their answer and the court had upheld their claim, Patterson would not be estopped, still the decisive fact here is that no such defense was made and no such adjudication had.

I would reverse the judgment below and let the outcome of the present action be determined by proof of true ownership.

MILLER and WHITTLE, JJ., concur in this dissent.