**Opal TURPIN et al., Plaintiffs,**

v.

**V. John LYLE and George H. Davis, Jr., Defendants.**

**Civ. A. No. 73–C–35–C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

June 3, 1974.

John J. Dwyer, Washington, D. C., for plaintiffs.

John H. O'Brion, Jr., Browder, Russell, Little, Morris & Butcher, Richmond, Va., for defendant Lyle.

Edward R. Slaughter, Jr., McGuire, Woods & Battle, Charlottesville, Va., for defendant Davis.

## OPINION and JUDGMENT

DALTON, District Judge.

On December 10, 1973, plaintiffs herein filed a complaint in this court charging the defendants with what can roughly be classified as conspiracy, attempted conversion, malpractice,[1] fraud, breach of trust, unjust enrichment and trespass. Jurisdiction was based upon 28 U.S.C. § 1332, there being complete diversity of the parties and the amount in controversy being in excess of $10,000.

Motions to dismiss have been filed by both defendants on the grounds that the complaint failed to state a claim upon which relief could be granted and that the plaintiffs are barred from pursuing the present action under the doctrine of res judicata. Both parties have filed memoranda on the res judicata issue, and the court is not prepared to rule on the defendants' motions.

■ The facts underlying the defendants' plea of res judicata do not appear to be in dispute. On June 20, 1973, the plaintiffs herein, with the exception of Opal Turpin, filed a motion for judgment in the Circuit Court of Rappahannock County, Virginia, against the same defendants as herein seeking to enforce a cause of action arising out of an alleged conspiracy of the defendants in 1972, regarding the disposition of certain real property located in Rappahannock County.[2] On July 6, 1973, both defendants filed demurrers to the motion for judgment, stating, inter alia, that it was insufficient as a matter of law because it "set forth no grounds for legal relief or damages."[3] A hearing on the demurrer was held on October 24, 1973, before the Honorable Hamilton Haas of the Circuit Court of Rappahannock County, who held the motion for judgment insufficient as a matter of law, because it set forth no grounds for legal relief or damages. By order of October 24, 1973,[4] the demurrers were sustained on the above ground, and plaintiffs were given thirty days within which to file an amended motion for judgment. Plaintiffs having failed to exercise the privilege of amending their motion and having sent a letter to Judge Haas by coun-

---

1. Defendant Davis is an attorney.

2. Copies of this motion for judgment have been submitted as exhibits by defendants.

3. Copies of this demurrer have been submitted as exhibits by defendants.

4. Copies of Judge Haas' order have been submitted as exhibits by defendants.

sel stating that they had no intention of doing so,[5] the state court judge entered an order which dismissed and ended the original action on November 27, 1973.[6]

■ A federal court must look to state law to determine whether recovery in the federal courts is barred by the state court judgment on the grounds of *res judicata.* *Cf.* Thomas v. Consolidation Coal Company, 380 F.2d 69 (4th Cir. 1967), cert. denied, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967), reh. denied, 389 U.S. 1059, 88 S.Ct. 768, 19 L.Ed.2d 862 (1968). The court in *Thomas* succinctly stated the general requirements which must be met before the rule will bar subsequent suits:

(1) The former judgment must have been both valid and final; (2) The cause of action asserted in the subsequent litigation must be the same cause of action as was asserted in the former litigation; (3) The former judgment must have been rendered on the merits; and (4) The parties to the former judgment must stand in such relationship to the parties to the subsequent action as to entitle the latter to the benefits and subject them to the burdens of the prior litigation.[7]

Plaintiffs in this case have not strenuously argued that the first of these requirements is not met, and the court must conclude that the order of Judge Haas of October 24, 1973, was both valid and final. The order of the Circuit Court of Rappahannock provided that the suit was "accordingly dismissed" and the "action so ended November 27, 1973." In the letter sent by plaintiffs' counsel to Judge Haas, it was stated that plaintiffs understood that "the Order sustaining the demurrer will become a Final Order in this action."

■ Plaintiffs maintain that they have alleged specific acts and specific offenses in this action which were not alleged in the state court action, some of which constitute new causes of action, according to the plaintiffs. The original motion for judgment alleged a conspiracy on the part of the defendants, and contained over eight pages of instances in which the defendants allegedly acted in furtherance of that conspiracy to defraud the plaintiffs. The court has rather painstakingly examined the original motion for judgment and the complaint filed with this court, which also alleges several pages of acts in furtherance of a conspiracy to defraud the

---

5. The November 21, 1973 letter from Judge J. Dwyer, attorney for the plaintiffs, to Judge Haas has been submitted as an exhibit by defendant Davis. It reads in pertinent part:

I have been given no authority by my client, Mrs. Hourahan, to file an amended motion for judgment and I do not intend file same [sic]. It would thus appear that upon the expiration of thirty days from October 24, 1973 in the absence of any amended motion for judgment in the file, this case will automatically be terminated on the trial level and that your order sustaining the demurrer will become a final order in this action. It would further appear that the hearing, now currently set for December 3, 1973, would accomplish no purpose.

Plaintiffs at one point in their memorandum in opposition to defendants' motions to dismiss argue that the above letter represents the taking of a nonsuit, which of course would not be a final adjudication on the merits, and that consequently *res judicata*

would not apply. This contention is belied by plaintiffs' own recognition in the letter that the forthcoming order by Judge Haas would be a final order in the case. The entry of the order itself on November 27, 1973, ended the period during which a nonsuit could have been taken. Code of Virginia § 8–220 (1957 Repl. Vol.).

6. Copies of this order have been submitted as exhibits by defendants. The order reads in full:

Plaintiffs having failed to exercise the privilege of amending their motion for judgment, pursuant to order of October 24, 1973, sustaining demurrer of defendants, said plaintiffs having further indicated through counsel no purpose or intention to offer any amendment to their original motion, the same is accordingly dismissed and this action so ended this 27th day of November, 1973.

7. These requirements are in accord with the Virginia case law upon this subject. Cases cited *infra.*

plaintiffs, and must conclude that for all practical purposes, the two are virtually identical in their import, differing only in form. Virginia law does not require that a subsequent complaint be identical in every particular before the bar of *res judicata* applies, so long as the matters alleged in the subsequent suit might properly have been litigated within the context of the original suit. This was stated as early as the case of Brunner v. Cook, 134 Va. 266, 272, 114 S.E. 650, 651, (1922) in which the now Supreme Court of Virginia stated:

It is well settled that there is a wide difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive on the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject matter of the litigation whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.

This rule was cited as controlling in two later Virginia cases which seem dis-

positive of the issues raised by plaintiffs herein: Gimbert v. Norfolk Southern Railroad Company, 152 Va. 684, 689, 148 S.E. 680, 682 (1929) and Griffin v. Griffin, 183 Va. 443, 450, 32 S.E.2d 700, 702 (1945). It is clear that the scope of the pleadings in the state court was sufficiently broad as to have encompassed all of the subject matter now alleged before this court. Plaintiffs simply have not alleged any matter not "incident to or essentially connected with" the grounds present in the original motion for judgment, nor have they set forth any new cause of action. "The Test of Identity is found in the inquiry whether the same evidence will support both actions." Pickeral v. Federal Land Bank of Baltimore, 177 Va. 743, 751, 15 S.E. 2d 82, 85 (1941).

█ Plaintiffs' most forceful argument is that the state court order of October 24, 1973, was not a decision on the merits. However, that contention must be rejected in light of Virginia law. Defendants demurred to the plaintiffs' motion for judgment in the state court, setting forth four grounds, the fourth of which stated that the motion set forth no grounds for legal relief or damages. Judge Haas found the first three of the grounds not well taken, but sustained the fourth, and granted the plaintiffs thirty days in which to file an amended motion, which they did not do.

The court notes initially that under Virginia law demurrers challenging pleadings on grounds that are not substantial or material, and which do not go to the very merits of a cause, are no longer allowed. Code of Virginia § 8–109 (1957 Repl.Vol.). This precise issue of whether or not a state court's action in sustaining a demurrer is a judgment on the merits has been considered on numerous occasions by both the Virginia Supreme Court and federal courts sitting in Virginia. In Gimbert v. Norfolk Southern Railroad Company, *supra*, the plaintiff failed to amend a motion for judgment when the trial court sustained a demurrer against him. The court had given the plaintiff thirty days to amend

his declaration because in the opinion of the trial court it stated no case. The trial court subsequently dismissed the original motion for judgment; the plaintiff did not appeal. In upholding a plea of res judicata asserted in a later proceeding, the Virginia Supreme Court noted that the trial court had originally given plaintiff leave to amend for purposes of stating a case "if he could." When the plaintiff failed to take such steps, the trial court lost further power over the case. The Supreme Court states, 152 Va. at 689, 148 S.E. at 682, that "[a] decision of an issue of law on a demurrer is a decision on the merits and constitutes res adjudicata as to any other proceedings where the same parties and the same issues are involved." Of similar accord is Brunner v. Cook, supra, which specifically holds that "[a] general demurrer which denies the right of the plaintiff to recover on the cause of action alleged, which is sustained, is a decision on the merits." 134 Va. at 272, 114 S.E. at 651.

In the case of Griffin v. Griffin, supra, the trial court sustained a demurrer to a bill of complaint on the grounds that it did not state a cause of action and was ambiguous, but granted leave to the plaintiff to file an amended bill within sixty days. The plaintiff failed to file an amended bill within the sixty-day period and did not appeal the court's decree, but instead filed a second original bill over a year after the first action had been instituted. The Virginia Supreme Court relied upon Gimbert, supra, in sustaining a finding of res judicata as to the second bill of complaint. The Supreme Court specifically noted that the plaintiff's failure to amend brought about the trial court's dismissal order, which it found to be a decision on the merits for all matters existing at the time of the dismissal order which the plaintiff had the opportunity to bring

before the court. Griffin, 183 Va. at 451–452, 32 S.E.2d at 702.

In Rivers v. Norfolk, Baltimore & Carolina Line, Inc., 210 F.Supp. 283 (E. D.Va.1962), Judge Hoffman sustained a motion for summary judgment on the pleadings on the basis of the fact that a Virginia state court had earlier dismissed a similar action by the plaintiff on a demurrer alleging lack of jurisdiction.[8] In the federal case, plaintiff argued that the sustaining of a demurrer and subsequent dismissal was not a judgment on the merits. Judge Hoffman relied on Griffin, supra, and Gimbert, supra, in stating:

> In Virginia the authorities are uniform to the effect that a demurrer goes to the heart of the case and, if sustained, it is a decision on the merits . . . [and thus] a judgment rendered thereon has the effect of a judgment on the merits where there has been no amendment sought or appeal noted. Rivers, supra, 210 F. Supp. at 287.

█ Furthermore, it is clear that under Virginia law it is too late now to inquire whether the state trial court erred in sustaining the demurrer to the bill of complaint in the original suit—in other words, the previous judgment is binding even though it may have been erroneous. Brunner v. Cook, 134 Va. at 273, 114 S. E. at 652; Gilbert, supra, 152 Va. at 690, 148 S.E. at 682. See also Thomas v. Consolidation Coal Company, supra, 380 F.2d at 77.

The remaining issue for consideration by this court is whether the addition of Opal Turpin as a plaintiff in the suit herein bars application of the principle of res judicata. This court is of the opinion that it does not. Opal Turpin is the mother of Barbara Hourahan, plaintiff herein, to whom Mrs. Hourahan and her then husband, James Hourahan, transferred certain real property, allegedly to be held in trust for the Houra-

8. Here there was no inherent defect in the power of the state court to grant relief, but rather a finding in this instance that the

case lacked a jurisdictional basis, which was a judgment on the merits.

han children.[9] Barbara Hourahan and her three children were all parties plaintiff in the state court action.

The general rule regarding this issue in Virginia is stated in Pickeral v. Federal Land Bank of Baltimore, 177 Va. 743, 751, 15 S.E.2d 82, 85 (1941):

. . . it is not the identity of the thing sued for, or of the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties *or their privies* is shown to have been determined in a former one, the question is res judicata, although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief. [Emphasis supplied.]

"The Test of Identity is found in the inquiry whether the same evidence will support both actions." [Citing from 24 AMER. AND ENG. ENCY. OF LAW 780 (2nd ed.), "Identity of Issue."]

The Supreme Court of Virginia had the following to say about what constitutes "privity" in Storm v. Nationwide Mutual Insurance Company, 199 Va. 130, 134, 97 S.E.2d 759, 762 (1957):

There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of *res adjudicata.* Who are privies requires careful examination into the circumstances of each case as it arises. In general, *it may be said that such privity involves a person so identified in interest with another that he represents the same legal right.* [Citing 30 AM. JUR., Judgments, § 225, p. 957.] [Emphasis supplied.]

In Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204 (1953), cert. denied, 345 U.S. 998, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953), the Supreme Court of Virginia earlier had stated:

It is generally held that "privity means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights; and the term 'privy' when applied to a judgment or decree refers to one whose interest has been legally represented at the trial." [*Citing from 50 C.J.S.* Judgments § 788, p. 324]. 194 Va. at 613, 74 S.E.2d at 208.

The court in *Patterson* goes on to quote Mr. Justice Eggleston, speaking for the court in Ward v. Charlton, 177 Va. 101, 115, 12 S.E.2d 791, 795, who said:

The doctrine of *res judicata* or estoppel by judgment is based on public policy . . . It "proceeds upon the principle that one person shall not a second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue which has been necessarily tried and finally determined, upon its merits, by a court of competent jurisdiction, in a judgment *in personam* in a former suit." United States v. California Bridge & Construction Co., 245 U.S. 337, 341, 38 S. Ct. 91, 93, 62 L.Ed. 332.

The doctrine is firmly established in our jurisprudence and should be

---

9. There is apparently some confusion as to when an effective transfer was made to Opal Turpin. Defendants' demurrers in the state court note that three separate deeds were used to effect a transfer. Deeds were recorded on January 26, 1973, May 18, 1973, and June 12, 1973; each apparently purported to transfer the real property referred to over to Opal Turpin. The trust in favor of the Hourahan children was apparently an oral one, not reflected in the deeds themselves. The deed of January 26, 1973 refers to Opal Turpin as the grantee of the property "as tenant by the entireties with full rights of survivorship." A copy of this deed was submitted as evidence by defendant Lyle.

maintained where applicable. 194 Va. at 614, 74 S.E.2d at 209.

Opal Turpin is a resident of Tennessee. There is no indication that she ever appeared in the Commonwealth of Virginia in connection with any of the incidents referred to by plaintiffs in their pleadings. She was not a party in the Circuit Court of Rappahannock County proceeding, as a result of which the defendants therein demurred to her absence on the ground that she, as the apparent owner of the property under the deed of January 26, 1973, was a necessary party. The trial court rejected this contention, most likely upon the basis of the allegations in the motion for judgment, which revealed the following factors indicative of a privity of relationship between Opal Turpin and Barbara Hourahan and her children:

(1) That Barbara Hourahan was the daughter of Opal Turpin and that on April 14, 1973, Mrs. Hourahan acted as agent for Opal Turpin in obtaining two contracts for sale of the real property which allegedly was the *res* of the trust for the benefit of the Hourahan children. (Page 5 of motion for judgment, subparagraph k.)

(2) That John J. Dwyer acted as counsel for both Barbara Hourahan and Opal Turpin in the closing of the real estate transaction and on behalf of Opal Turpin gave notification of default on June 1, 1973. (Page 7 of motion for judgment, subparagraph q.)

(3) That any proceeds from the sale of the property were to go to Barbara Hourahan and her children. (Page 8 of motion for judgment, subparagraph v.)

The addition of Opal Turpin as a party in the case at hand has resulted in no new substantive allegations—as a matter of fact, the only involvement that has been alleged on the part of Opal Turpin in this suit which was not alleged in the state court action is that she has suffered emotional distress and will be required to expend funds for legal expenses (presumably, largely as a result of the action in this court). It is difficult to perceive of any legal rights that are represented by Opal Turpin that were not previously presented in the state court by the appearance of Barbara Hourahan and her children. Opal Turpin certainly must be held to have been in privity with these of her descendants, in light of the above tests applicable under Virginia law. It is manifest that the key test would be met —that is, the same evidence would be necessary to support both actions, *see* Pickeral v. Federal Land Bank of Baltimore, *supra*, 177 Va. at 751, 15 S.E.2d at 85, and it certainly involves a "successive relationship to the same rights of property."

The fact that Opal Turpin may be a trustee of the real property involved herein, in view of the other factors present that show that she is clearly in privity with her daughter and grandchildren, does not accord her any special status under which the principle of *res judicata* cannot be applied. As 46 Am. Jur.2d, Judgments states under Judgments § 568, entitled "Fiduciary and Beneficiary":

Since a trust relationship exists between a fiduciary and a beneficiary, such as a guardian and ward, cestui que trust and trustee, etc., a judgment for or against a beneficiary in an action or proceeding to which the fiduciary was not a party is, provided there is an identity of subject matter, ordinarily *res judicata* as to the fiduciary, upon the ground that the latter, while not a party, is in privity with a party, his beneficiary, to such action or proceeding. [Citing cases.]

In accord is the annotation at 162 A. L.R. 1024 entitled "Res Judicata as Against Fiduciary." See especially Section III of this annotation, entitled "Trustee".

The conclusion of this court that the plaintiffs' action must be held to be

barred by the principle of *res judicata* is in accord with the interests voiced by the Supreme Court of Virginia in *Griffin, supra,* 183 Va. at 452, 32 S.E.2d at 703:

> The doctrine of res judicata may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, justice, and public tranquility. Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless. The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. The doctrine of res judicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings.

*See also,* Lober v. Moore, 417 F.2d 714, 720 (4th Cir. 1969).

Plaintiffs herein have had a day in court. Their motion for judgment filed in the state court was found not to have alleged any cause of action upon which relief could be granted, and leave to amend was given for the specific purpose of allowing the plaintiffs to state a remediable cause of action. For reasons known only to the plaintiffs or to plaintiffs' counsel, no such amendment was tendered, no non-suit was taken, and no appeal was noted from the order of November 27, 1973.[10]

For the above reasons, defendants' motion to dismiss on the ground of *res judicata* is granted, and the case is hereby ordered dismissed. Each party shall bear their own costs.

---

10. Counsel for the plaintiffs contends, without any recitation of authority or argument, that since the plaintiffs have not yet presented the evidence with respect to their claims to any court, application of the bar of *res judicata* would amount to a deprivation of due process. This avenue of argument seems foreclosed by the earlier discussion of *Gimbert, Griffin* and Brunner v. Cook, *supra.* As previously stated, plaintiffs were given thirty days to amend their motion for judgment, which they failed to do, they could have taken a nonsuit, which they did not, and finally they could have appealed Judge Haas' order of November 27, 1973, but did not. This strikes the court as more of a failure of diligence on the part of plaintiffs or their counsel, rather than as a deprivation of due process.